DALLAS–FORT WORTH REGIONAL AIRPORT BOARD and Braniff Special Facilities Bondholders Committee

v.

BRANIFF AIRWAYS, INCORPORATED.

Civ. A. No. 4–82–388–E.

United States District Court, N.D. Texas, Fort Worth Division.

Dec. 17, 1982.

Robert L. Hoffman, Strasburger & Price, Dallas, Tex., for plaintiffs.

William J. Rochelle, Jr., Rochelle, King & Balzersen, Dallas, Tex., Michael .Crames, Mitchel Perkiel, Andrew A. Kress, Levin & Weintraub, New York City, David Bonderman, Washington, D.C., for defendant.

## MEMORANDUM OPINION

MAHON, District Judge.

This case comes before the Court on appeal from the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. The Court has received briefs from the Appellant, Dallas-Fort Worth Regional Airport Board, from the Appellee, Braniff Airways, Inc., and from an Appellant-Intervenor, Braniff Special Facilities Bondholders Committee. Counsel presented oral arguments to the Court on October 14, 1982. Having now

considered these arguments and briefs, and having examined the record on appeal, the Court makes the following ruling:

## I. Factual Background

The Appellant is the public agency given the duty to operate the Dallas-Fort Worth Regional Airport under State and Federal laws. Appellee, Braniff Airways, Inc., was a major air carrier operating out of the Airport until May 13, 1982, when it filed a Chapter 11 Bankruptcy proceeding in the United States Bankruptcy Court for the Northern District of Texas. Braniff's headquarters and major hub were both located at the Dallas-Fort Worth Airport. In several agreements between Braniff and the Board, Braniff leased an airport terminal (the 2W terminal), fuel system facilities, a hangar, a cargo building, a ground services building, kitchen facilities, and its headquarters, known as "Braniff Place."

Two types of bonds have been issued to finance the construction of the airport facilities: general revenue bonds, payable out of the general revenues of the Airport, and special facility bonds, payable solely from the revenue generated by the facilities financed with the particular bond issue. The facilities leased to Braniff under the special facility agreements provide two types of revenue: ground rent is paid as part of the general revenue of the Airport, and net rent is a debt service payment to cover the interest and sinking fund of the corresponding bond issue or issues.

The Board seeks, through this action, to be allowed to re-enter the leased premises and lease the area to other parties. On June 25, 1982, after hearing four days of testimony, the Honorable John Flowers, Bankruptcy Judge, ordered that the Board was not entitled to such complete relief. The court did condition extension of the bankruptcy stay, however, requiring Braniff to pay rent in full for all the Airport facilities and for the facilities actually being used at Braniff Place. Also, the court found that paragraph 9 of the EDS Agreement, under which Braniff had been allowed to sublease a portion of the facilities to the EDS Corporation, was ambiguous and of no effect between the Board and Braniff. More detailed facts are presented below where necessary.

## II. Standard of Review

Pursuant to 28 U.S.C. § 2075, the Supreme Court of the United States has prescribed the rules by which bankruptcy matters are to be governed. Part VIII of the current Rules governs the procedure to be followed in the District Court. Rule 810, reported by the Supreme Court to Congress on April 24, 1973, see 411 U.S. 989, 93 S.Ct. 3164, 37 L.Ed.2d lxxv (1973), requires the reviewing court to accept the referee's findings of fact unless clearly erroneous, id. at 1090.

The United States Court of Appeals for the Fifth Circuit, in *Fruehauf Corp. v. Revitz (In re Transystems, Inc.)*, 569 F.2d 1364, 1369 (5th Cir.1978), and in *Acacia Mutual Life Insurance Co. v. Perimeter Park Investment Associates, Ltd. (In re Perimeter Park Investment Associates, Ltd.)*, 616 F.2d 150, 151 (5th Cir.1980), cited the Supreme Court's explanation of this standard of review: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). As to legal conclusions, however, this court must "independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Borg-Warner Acceptance Corp. v. Fedders Financial Corp. (In re Hammons)*, 614 F.2d 399, 402–03 (5th Cir.1980). Conclusions of law are "freely reviewable" in this court. *Machinery Rental, Inc. v. Herpel (In re Multiponics, Inc.)*, 622 F.2d 709, 713 (5th Cir.1980).

## III. Appellant's Issues

Appellant raises essentially five issues on appeal:

(1) Did the Bankruptcy Court err in its construction of the "EDS Agreement" (Record, Tab 40)?

(2) Were the Airport Leases properly terminated as to Braniff?

(3) Has the Appellant proven cause under 11 U.S.C. § 362(d)(1) requiring that it be granted relief from the automatic stay?

(4) Should the Appellant be granted relief from the automatic stay under 11 U.S.C. § 362(d)(2)?

(5) Should the Bankruptcy Court have required the Appellee to accept or reject the Airport leases?

All of these issues are reviewable by this Court, as they were presented to the Bankruptcy Court for determination. *See Novack v. Gardner (In re Novack),* 639 F.2d 1274 (5th Cir.1981).

### IV. Discussion

#### A. The EDS Agreement

On May 21, Braniff applied to the Bankruptcy Court for approval of its agreement with E.D.S. Airline Systems Corp. (EDS). In that Agreement, Braniff transferred control and operation of an automatic computerized reservation system and title to computer software and accounts receivable to EDS in exchange for almost $578,000. Record, Tab 40. Included in this agreement was a letter agreement between Braniff and the Appellant. *Id.* at 373–75. A dispute has developed as to the interpretation of paragraph 9, which relates to the rent or occupancy charge Braniff is to pay for use of Braniff Place. The Bankruptcy Court found the paragraph was ambiguous, that the parties had ascribed different interpretations to the paragraph, and therefore there was no "meeting of the minds" on this particular portion of the contract. Finding of Fact No. 28, Record, Tab 36, at 334. This led the Bankruptcy Court to conclude that paragraph 9 was not an agreement between the parties, and since it was not an essential part of the contract, it was severed from the remainder of the agreement. *Id.;* Record at 338–39.

■ Under Texas law, the question of whether a contract is ambiguous is a question of law. *R & P Enterprises v. La Guarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980); *Richland Plantation Co. v. Justiss-Mears Oil Co.,* 671 F.2d 154, 156 (5th Cir.1982). Where a question of construction of the contract's language is involved, the Court should consider "the *wording* of the instrument . . . *in the light of the surrounding circumstances . . . .*" *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 519 (Tex.1968). This construction is also a question of law for the Court. *Maples v. Erck,* 630 S.W.2d 488, 490 (Tex.App. —Corpus Christi 1982, writ ref'd n.r.e.).

In the contract before this Court, as in *Pinehurst,* there was a change in the wording which affects the construction to be given the contract. *See* 432 S.W.2d at 519. As paragraph 9 was first proposed by the Appellant, it suggested Braniff would agree to pay "rent" on Braniff Place until the premises were surrendered to the Appellant. *See* Tr. vl. IV, at 72–73; Defendant's Exhibit 20. That suggestion was changed, at Braniff's insistence, to "use and occupancy." *Id.;* Record, Tab 40, at 375.

■ "Use and occupancy," or administrative rent, is a term readily subject to definition under prior case law. When an unexpired lease is ultimately rejected by the trustee in bankruptcy, the estate becomes liable for administrative rent based on the reasonable value to the estate of actual occupation and use of the premises. *See In re Standard Furniture Co.,* 3 B.R. 527, 530 (Bkrtcy.S.D.Cal.1980). The contractual rental is presumed to be the reasonable and appropriate rate. *Diversified Services, Inc. v. Harralson,* 369 F.2d 93, 95 (5th Cir.1966). This rate is applied, however, on a pro rata basis according to the time and area actually used. *See Weil v. Lansburgh (In re Garfinkle),* 577 F.2d 901, 904 n. 2 (5th Cir.1978); *Brown v. Danning (In re Fredrick Meats, Inc.),* 483 F.2d 951, 952 (9th Cir.1973); *Reisenwebers, Inc. v. Irving Trust Co. (In re United Cigar Stores Co.),* 69 F.2d 513, 515 (2d Cir.), *cert. denied,* 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934). Where the parties show the contract rate is not reasonable, the Court makes a finding, on the evidence presented to it, as to what a reasonable rate is. *Diversified Services, supra,* at 95.

■ In the instant case, however, the Court is not trying to determine administrative rent under the bankruptcy statute. The parties in this case, with the consent of the Bankruptcy Judge, entered a contract in which Braniff was to pay a specified amount of rent. In construing that provision, this Court has recourse to prior case law to define the terms used in that contract. Paragraph 9 sets the rate Braniff must pay as the contract rate, apportioned according to the area and time Braniff actually occupies Braniff Place. This is the construction to be given the contract, considering the wording of the contract, as we must, in light of the circumstances surrounding the contracting. The Bankruptcy Court's conclusion that the phrase is ambiguous is reversed, and the Court finds that Braniff is to pay rent at the contract rate for the area actually occupied.[1]

■ As to the question of actual occupation or possession, an issue raised both by the Appellant Airport Board and the Appellant-Intervenor Braniff Special Facilities Bondholders Committee, it should be noted that providing maintenance and security for otherwise unused portions of the area in question does not result in a finding of actual or constructive possession. *See Reisenwebers, supra,* at 515–16.

This disposition of Appellant's first issue obviates the need to discuss other assigned errors, including the questions of severance and admissibility of parol evidence. Of course, if Braniff eventually accepts the whole lease on Braniff Place, the full rent would be due, as the contract in question here (the EDS Agreement) only defines what Braniff is obligated to pay during the pendency of the bankruptcy proceedings. Should either party find a lessee for the remaining portion of Braniff Place or for the entire premises, the cases cited above indicate that Braniff (the current lessee) has some obligation to provide a sublease to such a party.

### B. Termination of the Airport Agreements

#### 1. The Stipulation

Appellant asserts that the approved stipulation entered with the EDS Agreement validated notices of termination it sent to Braniff. The parties entered the stipulation as part of the bargain for the EDS Agreement. *See* Appellant's Brief at 32. The stipulation provides:

> notwithstanding anything to the contrary contained in the Restraining Order of this Court ..., the Board may issue and deliver any notices ..., including without limitation any notices of default or termination, which are in its judgment necessary or appropriate for the protection of its interests; it further being provided, however, that this Stipulation is without prejudice to (i) any rights of the Debtors to oppose such termination or to object to the efficacy of such notice of termination ....

Record, Tab 40, Exhibit B, at 382. Braniff contends that the qualification allowing the Debtor "to object to the efficacy of" any notice of termination allows it to object to the efficacy of the Board's notices of termination. The Appellant asserts this is not so.

■ Under Texas law, the same rules of construction apply to court orders as to other written instruments. *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 404–05 (Tex.1971); *Gurley v. Lindsley,* 459 F.2d 268, 275 (5th Cir.1972). The stipulation, approved by Judge Flowers, does not purport to affect the *validity* of any notice given by Appellant—it merely allows such notice to be given. The right of the debtor to contest the efficacy of any notice is explicitly stated.

Consistent with Judge Flowers' interpretation of this stipulation, *see* Finding of Fact No. 2, Record, Tab 36, at 328; Conclusion of Law No. 31, *id.* at 335, this Court

---

1. An estimate of the "contract rate" was elicited at trial, *see* Tr. vl. III, at 183, but the precise rate depends on previous leases and contracts of the parties, *see, e.g.,* Defendant Exhibits 8, 9 & 16. The area actually occupied has been determined. *See* Tr. vl. III, at 145, 184; Defendant Exhibit 16. Recent invoices also were presented at trial. *Cf.* Defendant Exhibit 18 (listing amounts due for the month of May).

finds that the stipulation did not validate the Appellant's notice of termination dated May 24, 1982.

## 2. Default of Payments

■ Alternatively, the Bankruptcy Court found that Braniff was not in default as to any payments. The Board has on occasion accepted payments, or at least not terminated carriers for payments, more than thirty days late. *See* Tr. vl. I, at 195–96. Braniff's late payments were within this recognized grace period.

The EDS Agreement, as construed under Texas law, provided for a lower rent for Braniff Place, so the underpayment of that amount was not a default. Prepetition debt could not be paid, because such action is forbidden by the Bankruptcy Code. *See also* Finding of Fact No. 1, Record, Tab 36, at 328.

The Bankruptcy Court's finding that Braniff's termination was due to the bankruptcy petition filed by the debtor is not clearly erroneous. It appears from the record that any misunderstanding[2] or late payment by Braniff, or any other carrier, would have been excused if Braniff were not in bankruptcy. Appellant may not terminate Braniff just because of the bankruptcy petition. *See* Finding of Fact No. 7, Record, Tab 36, at 329.

## 3. Failure to Operate an Airline

■ Appellant further contends that Braniff's failure to continue in operation as an airline is a default of implied covenants in contracts entered by Braniff. It is clear from the leases that temporary suspensions were contemplated, *see* Finding of Fact No. 21, Record, Tab 36, at 332, and that Braniff's temporary failure to run an airline is not a breach of the leases.

**2.** The misunderstanding of the air conditioning bill was not a failure substantially to comply with the agreements between Appellant and Braniff. *See Chase v. Great Scott Food Market, Inc. (In re Great Scott Food Market, Inc.),*

## C. Relief From Bankruptcy Stay—11 U.S.C. § 362(d)(1)

### 1. Power of Bankruptcy Court

■ Appellant's contention that the Bankruptcy Court could only accept or reject Braniff's proposals for adequate protection is without merit. The Bankruptcy Court clearly has been given authority to condition or modify the stay. 11 U.S.C. §§ 362(d) and 363(e).

### 2. Adequate Protection

Appellant claims it is entitled to adequate protection, under 11 U.S.C. § 361, as to three different functions—as a public agency, a landlord and a trustee for bondholders. Each of these will be considered separately.

#### a. The Board as Public Agency

■ Appellant asserts three bases for its claim of adequate protection as a public agency. The first is its duties under federal law, specifically 49 U.S.C. § 1718(a)(1). Secondly, a claim is made for adequate protection relying on state law, Tex.Rev.Civ. Stat.Ann. art. 46d–7 (Vernon Supp.1982–83), and 46d–15 (Vernon 1969). Finally, appellant claims a need for adequate protection against damage to the "economy of the Fort Worth-Dallas community." *See* Appellant's Brief at 49.

Federal law provides that

[airports] will be available for public use on fair and reasonable terms and without unjust discrimination, including the requirement that (A) each air carrier . . . shall be subject to nondiscriminatory and substantially comparable rates, fees, rentals, and other charges . . . subject to reasonable classifications such as tenants or non-tenants . . . .

49 U.S.C. § 1718(a)(1). This provision was added to the Airport and Airway Development Act of 1970 by the Airport and Airway Development Act Amendments of

1 B.R. 223, 224–25 (Bkrtcy.D.R.I.1979). *See generally* Simpson, *Leases and the Bankruptcy Code: Tempering the Rigors of Strict Performance,* 38 Bus.Law. 61 (1982).

1976, Pub.L. No. 94–353, 90 Stat. 871 (1976). As originally put in the House bill, H.R. 9771, 94th Cong., 2d Sess. (1976), *sponsors* —those who would receive federal monies under the Airport Development Acts—were prohibited from enforcing discriminatory "rates, fees, rentals, and other charges." *See* H.R.Rep. No. 594, 94th Cong., 2d Sess. 40–41, *reprinted in* 1976 U.S.Code Cong. & Ad.News 1600, 1614. The Conference substitute, "essentially the same as the House bill," Conf.Rep. No. 1292, 94th Cong., 2d Sess. 29, *reprinted in* 1976 U.S.Code Cong & Ad.News 1638, 1648 (1976), leaves the language ambiguous as to its applicability. Clearly, if the Airport Board were charging discriminatory rates, future federal funding would be jeopardized.

In the present situation, however, it is not certain that Braniff's handling agreement fee structure violates these provisions of federal law. Only "substantially comparable rates . . . subject to reasonable classifications" are required. 49 U.S.C. § 1718(a)(1). What is substantially comparable will vary with the circumstances of the rate structure. *See Southern Airways, Inc. v. City of Atlanta,* 428 F.Supp. 1010, 1017 (N.D.Ga.1977). Two factors which must be considered in determining substantial similarity are the charging of the rates by Braniff—which is not the sponsor—and the fact of Braniff's bankruptcy proceedings.

The Bankruptcy Court limited Braniff to rates based on Braniff's actual costs of providing the services in question. Conclusion of Law No. 33(a), Record, Tab 36, at 336–37. Testimony indicates that the rates Braniff charges for handling agreements are not substantially greater than in the industry generally. Tr. vl. III, at 72. The charges made, in fact, cover only the costs of providing the service, *Id.* at 68, as required by the Bankruptcy Court's conditioning of the stay.

This Court cannot, considering all the circumstances, find that the rates charged by Braniff are unreasonable. *See* 428 F.Supp. at 1019. Coupling this with the fact that Braniff is not a "sponsor" under the Airport Development Acts, this Court holds that any interest Appellant has by reason of 49 U.S.C. § 1718 is "adequately protected."

Appellant contends further that some assurances and covenants in the grant agreements with the federal government may be violated due to the bankruptcy stay. *See* Appellant's Brief at 48.[3] Assurance 28 provides the Airport must be self-sustaining. The temporary nature of the bankruptcy stay will not affect this covenant. Assurance 22 requires the Board to "operate and maintain in a safe and serviceable condition" the airport and associated facilities.[4] The record fully supports Judge Flowers' finding that Braniff is properly maintaining the leased premises. Finding of Fact No. 25, Record, Tab 36, at 333.

Similarly, no further protection is required because of the operation of State law, as Appellant contends. Tex.Rev.Civ. Stat.Ann. art. 46d–15 (Vernon 1969) declares the acquisition and operation of airports to be "public and governmental functions, exercised for a public purpose, and matters of public necessity . . . ." Art. 46d–7 (Vernon Supp.1982–83) allows for the adoption of ordinances to regulate the operation of airports.[5] Braniff continues to maintain the leased premises, *see* Finding of Fact No. 25, Record, Tab 36, at 333, so no duties owed by the Board to the State are being breached. Therefore, Braniff is providing "adequate protection" for this interest of the Board.

---

**3.** Assurances 18 & 20 provided that rates must be applied on a "not unjustly discriminatory" basis. *See* Plaintiff's Exhibits 33–35, assurances 18 & 20. Braniff's rates, if discriminatory as that term is defined in those agreements, is not unjustly so. Assurance 41 in Plaintiff's Exhibits 33 and 35 tracks § 1718, and is covered by the discussion above.

**4.** *Id.,* assurance 22.

**5.** Nowhere does the Municipal Airports Act authorize adoption and enforcement of rules "for the orderly, safe, efficient and sanitary operation of the Airport," as purportedly quoted from that statute by Appellant. Appellant's Brief at 49.

■ Any damage to the "transportation system" in the Fort Worth-Dallas area or "negative impact" on the area's economy is protected against by the conditions already put on the stay by the Bankruptcy Court. It is not necessary for Braniff to provide "adequate protection" against *speculative* injury to the economy or transportation system. Even assuming Appellant would have standing to raise such a claim of general injury, which is by no means certain, as neither is "an interest in property" of Appellant, it is not clear there *is* any continuing injury. *See* Findings of Fact Nos. 8–14.

b. The Board as Landlord

■ The adequate protection required for a lessor under section 362(d) is "the performance for which he has contracted." *In re Lafayette Radio Electronics Corp.,* 9 B.R. 993, 998 (Bkrtcy.E.D.N.Y.1981) (defining "adequate assurance" under § 365(b)(1)(C)). Under each of the four airport facilities leases, Appellant is receiving the full amount of rent due—just as if no bankruptcy had been filed. For the Braniff Place lease, Appellant has been receiving the amount found due it by the Bankruptcy Court. As discussed above, this amount was an amount contracted for. Appellant can demand no more than this.

In addition, consideration of all the facts reveals that Appellant could expect no more than the Braniff Place lease. It appears that termination of Braniff as lessee would diminish considerably the Board's income on that lease. *See* Tr. vl. III, at 139–40; vl. IV, at 104. It appears highly unlikely that Braniff Place can be leased to any other entity, because neither party has been able to locate a potential lessee for Braniff Place. Under this state of affairs, Appellant's interest in the total leased premises is "adequately protected" as required by section 361.

c. The Board as Trustee for Bondholders

■ The issue of adequate protection for Appellant as Trustee is to a large degree governed by the discussion relating to the airport leases. Braniff is paying the full rent on four of those leases, which is the full amount due. If Braniff were ejected from Braniff Place, the bondholders would lose even the lower amount that Braniff is paying now. The present bondholders, viewed from the perspective of revenues out of which to pay the debt obligation, are adequately protected.

■ Appellant raises one other point in regards to bondholders. Claiming Braniff's bankruptcy will force the Board to allow higher interest on future bond issues, Appellant demands the stay be lifted. As found by the Bankruptcy Court, any damage in the way of higher interest rates on bonds has already occurred. The Braniff bankruptcy itself caused the problem, if any exists. Finding of Fact No. 12, Record, Tab 36, at 331. This finding is supported by ample evidence, and is not clearly erroneous. Hence there is no need to provide adequate protection on this ground.

D. Relief from Bankruptcy Stay—11 U.S.C. § 362(d)(2)

■ An alternative provision under which a party in interest may obtain relief from the bankruptcy stay is section 362(d)(2) of Title 11:

> On request of a party in interest and after notice and a hearing, the court shall grant relief . . . with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

The law is clear that both elements must be met to require relief from the stay. Appellant bore the burden of proof on the issue of lack of equity interest in the leasehold, while Braniff had the burden of showing the property is necessary to effective reorganization. 11 U.S.C. § 362(g); Conclusion of Law No. 30, Record, Tab 36, at 334.

Bankruptcy Judge Flowers found the Board failed to carry its burden of proof as to lack of equity in Braniff in the leased premises. Record at 335. In examining the record, this Court cannot say, as did the

Bankruptcy Court, that Braniff has demonstrated an equity interest in the leases. This question, however, is not before the Court. The issue is whether Appellant successfully bore its burden of proving a *lack* of equity. *See* 11 U.S.C. § 362(g)(1). The record is clear that Appellant has not carried this burden.

Alternatively, if the debtor proves the premises in question are necessary for an effective reorganization, the stay need not be lifted. 11 U.S.C. § 362(d)(2)(B). The testimony established that the airport facilities were necessary for any possibility of reorganization. *See* Tr. vl. IV, at 26, 29, 87–89. The Bankruptcy Court found the facilities were essential. Finding of Fact No. 22, Record, Tab 36, at 333. This finding is amply supported by the evidence and is not clearly erroneous.

**E.   Acceptance or Rejection of the Leases**

 Appellant requested the Bankruptcy Court to specify a period of time within which Braniff would be required to accept or reject the leases in question. 11 U.S.C. § 365(d)(2) puts such a request within the discretion of the Court. As all of Appellant's interests have been adequately protected, *see* discussions *supra,* a balancing of the equities would allow Braniff a reasonable time within which to accept or reject the leases. It would have been quite unreasonable, in this highly complex bankruptcy proceeding, to have required such a decision within two months of the date the petition in bankruptcy was filed.

The leases need be neither accepted nor rejected at this time. Thus, any decision on the severability of the lease agreements would be premature. This Court need not consider the parties' arguments as to the severability of the Braniff Place lease.

**V.   Conclusion**

Appellant has presented essentially five issues for review in this Court. There has been no showing of a need for relief from the bankruptcy stay. The Bankruptcy Court properly found the Airport leases were not terminated and need not have been accepted or rejected by Braniff. Ac-

cordingly, these portions of the Bankruptcy Court's Order are affirmed.

The construction given the EDS Agreement, under Texas law, was erroneous. As construed by this Court, "use and occupancy" is readily defineable. Thus, Braniff is obligated to pay a proportionate rent at the contract rate.

Therefore, it is ORDERED that the Judgment in this case be amended so that Braniff is obligated to pay rent on Braniff Place at the contract rate for so much of the area as is actually occupied. In all other things, this case is AFFIRMED.