TATE, Circuit Judge:
 

 The Memphis-Shelby County Airport Authority applied to the Bankruptcy Court for the Northern District of Texas to receive administrative rent under section 503 of the Bankruptcy Code of 1978, 11 U.S.C. § 101
 
 et seq.
 

 [1]
 

 The bankruptcy court, applying the doctrine of res judicata, dismissed the Airport’s claim, holding that an earlier proceeding had already disposed of it. The district court reversed, finding that the bankruptcy court’s decision was clearly erroneous. We affirm the district court’s decision, and remand the case to the bankruptcy court for evidentiary proceedings based on the Airport’s administrative expense claim.
 

 I.
 

 Beginning in 1962, the Memphis-Shelby County Airport Authority entered into a series of leases for space and facilities at the Memphis International Airport with Braniff Airways, Inc., the appellant in this action. In May of 1982 Braniff filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. In addition to the automatic stay provided as a matter of course by section 362 of the Bankruptcy Code, Braniff sought and obtained a preliminary injunction restraining the Airport and others from interfering with its leasehold interests at the Memphis Airport.
 

 Approximately three months after the petition was filed, the Airport commenced an adversary proceeding against Braniff seeking that the court lift the automatic stay and order Braniff to (1) either assume or reject the Airport leases within a certain time period; (2) pay for the reasonable use of the premises from the date on which the petition was filed until the date on which the leases are assumed or rejected; and (3) pay all rent it received from its sublessees to the Airport as adequate protection.
 

 After an October 5th hearing on the Airport’s complaint, the bankruptcy judge entered an order on October 27th requiring Braniff to assume or reject the leases with
 
 *1285
 
 in sixty days and to pay over to the Airport all sums received from sublessees until the date of assumption or rejection.
 

 Braniff eventually rejected the leases effective March 1, 1983,
 
 [2]
 
 and the Airport applied to the bankruptcy court to receive the full contract rental rate as a cost of administration pursuant to section 503 of the Bankruptcy Code. Braniff filed no written response to the Airport’s application. Instead, it moved orally at a subsequent hearing to dismiss the application, contending that the court’s October 27th order had disposed of the administrative rent issue and barred its relitigation. After a hearing, the bankruptcy judge concluded that the issue of administrative rent had already been decided and dismissed the Airport’s application. The Airport appealed the decision to the district court. After carefully reviewing the record, the district court reversed the bankruptcy judge, holding that his decision that res judicata barred the Airport’s claim for administrative rent was clearly erroneous. This appeal by Braniff ensued.
 

 II.
 

 The parties’ positions can be summarized as follows. Braniff asserts that the Airport’s request that Braniff pay for its “use and occupancy” of the leased premises in the first proceeding before the bankruptcy judge represented a claim for administrative rent, which claim was fully and finally disposed of by the bankruptcy judge in his October 27th order. The Airport contends, however, that in its first proceeding it requested only adequate protection and that Braniff accept or reject the leases in controversy. The Airport also asserts that, as the district court found, the parties used the phrase “use and occupancy” during the proceedings before the bankruptcy judge only in a non-technical sense to describe Braniff’s presence at the airport in connection with the Airport’s claim, and not as a claim for administrative rent.
 

 III.
 

 The typical remedy for a party to an unexpired lease who is suffering economic losses as a result of a bankruptcy is to move for an order compelling the bankruptcy trustee to assume or reject the lease within a certain time period pursuant to section 365(d)(2) of the Bankruptcy Code.
 
 See generally
 
 2 Collier on Bankruptcy TITT365.01-03 (15th ed. & Supp.1985); Murphy, Creditors’ Rights in Bankruptcy § 9.07 (1985).
 
 [3]
 
 The trustee has a reasonable time in which to do this. 2 Collier on Bankruptcy ¶ 365.03, at 365-24 to -25 (15th ed. & Supp.1985).
 

 If the trustee assumes the lease, the debtor’s estate becomes liable for the full rent accruing under the terms of the lease.
 
 In re Florida Airlines, Inc.,
 
 17 Bankr. 683, 684 (Bankr.M.D.Fla.1982). If the trustee ultimately rejects the lease the debtor’s estate is liable only for the reasonable value of its use and occupancy of the premises. The lessor is entitled to receive administrative expense priority for that amount
 
 (see
 
 §§ 503 and 507(a)(1) of the Bankruptcy Code) which is ordinarily presumed to be the contract rental rate, adjusted downward or upward to reflect the extent to which the debtor actually used the demised premises.
 
 In re Energy Resources Co., Inc.,
 
 47 B.R. 337, 338-39 (Bankr.D.Mass.1985);
 
 Dallas-Fort Worth Regional Airport Board v. Braniff Airways, Inc.,
 
 26 B.R. 628, 630-31 (N.D.Tex.1982) [hereinafter cited as
 
 DFW Regional Airport Board]; In re Standard Furniture Company,
 
 3 B.R. 527, 530 (Bankr.S.D.Cal.1980);
 
 see generally
 
 Fogel, Executory Contracts and Unexpired Leases in the
 
 *1286
 
 Bankruptcy Code, 64 Minn.L.Rev. 341, 365-71 (1980).
 

 Because this claim for use and occupancy is given administrative expense status, it is sometimes known as “administrative rent.”
 
 DFW Regional Airport Board, supra,
 
 26 B.R. at 630. A claim for administrative expense determines not only the sum to which the lessor is entitled, but also the priority to which he is entitled. If granted administrative expense priority, his claim will often disadvantage the general creditors of the estate.
 
 S & W Holding Company v. Kuriansky,
 
 317 F.2d 666, 667 (2d Cir.1963).
 

 The claim for administrative rent is generally made after the lease has been rejected,
 
 see, e.g., Standard Furniture, supra,
 
 3 B.R. at 529, for that is when the actual benefit of the demised premises to the debtor lessee is most easily determined. This is logical, for if there is no benefit to the estate, the breach of an executory agreement or lease does not give rise to a claim for administrative expense, but only an unsecured breach of contract claim under section 502(g).
 
 In re Airlift International, Inc.,
 
 761 F.2d 1503, 1509 (11th Cir.1985).
 
 See also American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,
 
 280 F.2d 119, 124-25 (2d Cir.1960).
 

 In appropriate cases, however, a court may order the trustee or debtor in possession to pay in advance “a reasonable sum to be treated as payment for use and occupation in the event the lease is rejected, or, on account of rent, in the event the lease is adopted.” 2 Collier,
 
 supra,
 
 11365.-03 at 365-33 and cases cited. This is so even though “[a]s a matter of law, [an] administrative claim for rent does not accrue until the Court formally authorizes the rejection of the relevant lease.”
 
 In re Destron, Inc.,
 
 40 B.R. 927, 928 (Bankr.N.D.Ill.1984) (dicta).
 

 The other remedy that may be available to a lessor is to seek adequate protection of his interest
 
 [4]
 
 pursuant to sections 362(d) and 363(e) of the Bankruptcy Code.
 
 See generally
 
 2 Collier,
 
 supra,
 
 II 363.06, at 363-27. A determination of adequate protection is made pursuant to section 361 of the Bankruptcy Code, which governs the forms that adequate protection may take.
 
 [5]
 
 The nature of the creditor’s interest in the property, the potential harm to the creditor as a result of the property’s decline in value and the method of protection are all to be considered.
 
 In re Alyucan Interstate Corp.,
 
 12 B.R. 803, 806-09 (Bankr.D.Utah 1981). Periodic rental payments compensating a creditor for use and occupancy of his premises may serve as adequate protection.
 
 In re Castle Tool Specialty Company,
 
 22 B.R. 44, 45-46 (Bankr.E.D.Pa.1982).
 

 The considerations involved in the granting of adequate protection differ markedly from those involved in an administrative expense determination. As has been thoughtfully expressed by one court:
 

 Adequate protection is a device intended to provide additional protection against loss to a secured creditor arising from continuation of the automatic stay of 11 U.S.C. § 362 as called for by the circumstances of the case. By its nature, adequate protection is not final unless all parties later treat it as final.
 

 In re Nordyke,
 
 43 B.R. 856, 860 (Bankr.D.Ore.1984).
 
 See also Alyucan, supra,
 
 12 B.R. at 806. Thus, unlike the claim for administrative rent, which represents a final amount owing a lessor as a result of a
 
 *1287
 
 lessee’s use and occupancy of his premises under a rejected lease, the adequate protection provided to creditors by Chapter 11 is generally considered interim relief.
 

 IY.
 

 The doctrine of res judicata prevents the parties to an action from bringing a subsequent action if certain conditions are met. The parties must be identical in both actions, the prior judgment must have been final, on the merits, and rendered by a court of competent jurisdiction, and the same cause of action must have been involved in both cases.
 
 Nilson v. City of Moss Point,
 
 701 F.2d 556, 559 (5th Cir.1983); 1B Moore’s Federal Practice f 0.405[1] at 178-88 (2d ed. 1984). Here, the controversy is whether a claim for administrative rent was made in the first adversary proceeding before the bankruptcy court — that is, were the same claims presented by the Airport in its first and second proceedings against Braniff?
 

 Like the district court, this court is bound to accept the factual findings of the bankruptcy court unless such findings are clearly erroneous.
 
 In re Missionary Baptist Foundation of America,
 
 712 F.2d 206, 209 (5th Cir.1983);
 
 In re Bardwell,
 
 610 F.2d 228, 230 (5th Cir.1980). This principle is now embodied in Rule 8013 of the Bankruptcy Rules of 1983, 11 U.S.C. Rule 1002
 
 et seq.,
 
 (“On an appeal, ... findings of fact [by the bankruptcy court] shall not be set aside unless clearly erroneous.”)
 

 [A] finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 

 Anderson v. City of Bessemer City,
 
 — U.S. -, 105 S.Ct. 1504, 1507, 84 L.Ed.2d 518 (1985) quoting in part,
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The district court concluded that the bankruptcy court’s holding was clearly erroneous based on several factors. These are examined below.
 

 As the district court noted, the airport’s complaint never referred to section 503 of the bankruptcy code, the section under which a claim for administrative rent would be made. Although the Airport did ask to be compensated for Braniff’s reasonable use of the premises during the postpetition period, the court found that this request did not constitute a claim for administrative rent under section 503 but was instead a phrase used in a nontechnical sense to describe Braniff’s presence at the airport. We agree.
 

 As stated earlier, determinations of adequate protection and administrative rent involve very different considerations and have different effects. Braniff argues that the plaintiff’s use of the term “use and occupancy” in their complaint and at the October 5th hearing was equivalent to using the term “administrative rent.” This is simply not the case. While some cases do equate the two,
 
 see, e.g., DFW Regional Airport Board, supra,
 
 26 B.R. at 631, the phrase is not inevitably used as a term of art. Generally, we find claims for administrative rent are made by asking to receive the reasonable value of the lessee’s use and occupancy of the premises
 
 as
 
 an administrative expense.
 
 See, e.g., id.; In re Florida Airlines, supra,
 
 17 B.R. at 684-85;
 
 In re Energy Resources Co., Inc.,
 
 47 B.R. 337, 338-39 (Bankr.D.Mass.1985) (suggesting that a lessor is entitled to more than just actual use and occupancy as an administrative expense). In fact, we find
 
 no
 
 cases in which the phrase “use and occupancy” was used, without more, to denote a request for administrative rent.
 

 The airport never requested administrative rent at the October 5th hearing, and clearly appeared to refer to “use and occupancy” of the airport only as evidence of what they were entitled to as adequate
 
 *1288
 
 protection.
 
 [6]
 
 Most of the testimony related to the potential hardship that would be imposed on Braniff by an order requiring them to accept or reject the lease. Moreover, there was no testimony introduced concerning the reasonableness of the contract rental rate, a factor that is necessary to a determination of administrative rent.
 
 [7]
 
 Additionally, neither Braniffs answer to the complaint nor its trial brief referred to the issue of use and occupancy or administrative rent. They spoke solely to the Airport’s request that Braniff be required to assume or reject the leases, and to its claim for adequate protection.
 

 In dismissing the Airport’s claim for administrative rent on the grounds of res judicata, the Bankruptcy Judge relied on statements in his October 27th order that the sublease rentals received by Braniff were to be paid to the Airport “as adequate protection ... and as use and occupancy charges.”
 
 [8]
 
 However, his written and oral reasons conflict. His oral reasons for ruling contained in the transcript of the October 5th hearing do not mention either use and occupancy charges or administrative rent, but only that the Airport would receive the sublease rentals received by Braniff as adequate protection.
 

 Moreover, as the district court pointed out, and as discussed earlier, unlike determinations of adequate protection, determinations of administrative rent generally occur after and not before the rejection of an unexpired lease. Braniff’s attempt to rely on a different order in the proceedings involving the Dallas-Fort Worth Regional Airport Board is not persuasive. In that case, administrative rent was determined early on in the proceeding. However, the Memphis-Shelby Airport Authority was not a party to that other action and Braniff can cite to no other case or authority establishing such an order of proceedings. In addition, in the case of Dallas-Fort Worth Airport, unlike the present case, Braniff and the Airport had entered into a contract with the consent of the bankruptcy judge to pay a specified amount of rent.
 
 DFW Regional Airport Board, supra,
 
 26 B.R. at 632. In this case, the only sums to be paid were any sublease rentals that Braniff might receive. Had it received none, the Airport would have received no compensation from Braniff at all. Not even Braniff appears to assert that the Airport was entitled to no administrative rent payment. As discussed above, administrative rent must include the full benefit received by the lessee as a result of its occupation of the premises. This benefit might include the preservation of the improvements Braniff constructed on the premises,
 
 In re Universal Medical Services, Inc.,
 
 357 F.Supp. 1137, 1145 (E.D.Pa.1973), and must take
 
 *1289
 
 into account that the contract rate is presumed appropriate.
 
 Diversified Services, Inc. v. Harralson,
 
 369 F.2d 93, 95 (5th Cir.1966);
 
 In re Energy Resources, supra,
 
 47 B.R. at 338-39.
 

 The party seeking to assert that an issue was already adjudicated upon bears the burden of proving that contention, particularly where the record is ambiguous or confusing.
 
 Gulf Tampa Drydock Co. v. Germanischer Lloyd,
 
 634 F.2d 874, 878 (5th Cir.1981); 1B Moore’s Federal Practice,
 
 supra,
 
 ¶ 408[1] at 293. This Braniff has not done. Nor has it refuted the fact that bankruptcy courts typically allow creditors to press their claims more than once, as circumstances change.
 
 See In re Nordyke, supra; In re Alyucan, supra,
 
 12 B.R. at 805 n. 3 (“the outcome of a relief from stay hearing is not
 
 res judicata
 
 for any subsequent hearing.”)
 
 Cf., Fairchild v. Lebanon Production Credit Assn.,
 
 31 B.R. 789, 795 (Bankr.S.D.Ohio 1983) (“[a] determination of the amount of a secured claim in one aspect of a bankruptcy proceeding is not necessarily
 
 res judicata
 
 in other aspects of that proceeding.”) Moreover, if reasonable doubt exists as to what was decided in the first action, the doctrine of res judicata should not be applied.
 
 Kauffman v. Moss,
 
 420 F.2d 1270, 1274 (3d Cir.),
 
 cert. denied,
 
 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970);
 
 McNellis v. First Federal Savings and Loan Association of Rochester, New York,
 
 364 F.2d 251, 257 (2d Cir.),
 
 cert. denied,
 
 385 U.S. 970, 87 S.Ct. 504, 17 L.Ed.2d 434 (1966). More than reasonable doubt is present here.
 
 [9]
 

 V.
 

 In conclusion, we note that
 

 Because res judicata may govern grounds and defenses not previously litigated ... it blockades unexplored paths that may lead to truth. For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry.
 

 Brown v. Felsen,
 
 442 U.S. 127, 132, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767 (1979). The requisite “careful inquiry” was not present here.
 

 For the foregoing reasons, the opinion of the district court reversing the bankruptcy court’s order and remanding the matter is AFFIRMED.
 

 [1]
 

 . The 1978 code was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984. This case is governed by the 1978 law, the law in force at the time when the petition was filed, pursuant to section 403 of Pub.L. 95-598, Title TV, Nov. 6, 1978, 92 Stat. 2683:
 

 (a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.
 

 Therefore, unless noted otherwise, all references in this opinion refer to the Bankruptcy Code of 1978.
 

 [2]
 

 . As of March 1, 1983, the post-petition amount owed the Airport under the leases was $174,-000.31 less credits of $37,415.50, being the amount of sublease rentals paid by Braniff to the Airport.
 

 [3]
 

 . § 364(d)(2) provides:
 

 In a case under chapter 9, 11, or 13 of this title ... the court, on request of any party [to an unexpired lease], may order the trustee to determine within a specified period of time whether to assume or reject such ... lease.
 

 [4]
 

 . Not all courts have permitted lessor’s to receive adequate protection,
 
 see, e.g., In re Sweetwater,
 
 40 B.R. 733, 742-44 (Bankr.D. Utah 1984), however, some have.
 
 Cf. In re Castle Tool Specialty Company,
 
 22 B.R. 44 (Bankr.E.D.Pa.1982). Murphy,
 
 supra,
 
 ¶ 9.07 at 9-10 & n. 3 suggests this as a possible remedy to a lessor, pending rejection or assumption.
 
 See also In re Alyucan Interstate Corp., supra,
 
 12 B.R. at 805 n. 5. Because the bankruptcy judge clearly thought that adequate protection was available in this case, however, and the parties do not challenge this finding, we need not consider this issue on appeal.
 

 [5]
 

 . The compensation may not take the form of entitling the creditor to an administrative expense. 11 U.S.C. § 361(3).
 

 [6]
 

 . We maintain that, of course, we are due adequate protection in the form of some continuing rent as long as the debtor continues to occupy the premises. [1st Supp.Record on Appeal, Vol. 2, at 6-7.]
 

 Counsel for the Airport closed:
 

 And finally, if Braniff is going to be left in this space, we need adequate protection, we need to be paid for the use and occupancy of these premises....
 

 Id.
 
 at 42.
 

 [7]
 

 . Braniff argues that evidence as to the administrative rent issue was presented at the October 5th hearing. While much of the evidence presented would be relevant to the determination of such an issue, the tenor of the hearing and an examination of the transcript evince that administrative rent was not the issue on which evidence was being presented.
 

 Moreover, Braniffs contention is undermined by the statement of its counsel in closing:
 

 With respect to the adequate protection point ...
 

 you determine use and occupancy by looking at the value of the premises to the Debtor in the interim period.
 

 [Oct. 5th, Tr. at 43.]
 

 [8]
 

 .One of the grounds for the district court’s ruling was that the transcript of the October 5th hearing was not introduced at the hearing on the administrative rent claim. The court, concluded that this indicated that there was “no evidence to show that the bankruptcy judge referred to anything but his memory to recall what he meant to encompass in his October 27, 1982 order." While the district court’s conclusion may have been correct, we decline to rest our holding on this ground. Although the transcript was not introduced into the record, it was given to the bankruptcy judge at the hearing and the record shows that he briefly perused it to refresh his memory.
 

 [9]
 

 . To the extent that the bankruptcy court’s conclusion resulted from the misapplication of a legal standard, it is freely reviewable by this court.
 
 In re Missionary Baptist Foundation, supra,
 
 712 F.2d at 209. Because we agree with the district court that the bankruptcy judge’s decision was, as a matter of
 
 fact
 
 clearly erroneous, however, we do not delve into that issue.