**In re HULEN PARK PLACE LTD., Debtor.**

**NCNB TEXAS NATIONAL BANK, Appellant,**

v.

**HULEN PARK PLACE LTD., Appellee.**

Civ. A. No. 4–90–636–A.

United States District Court, N.D. Texas, Fort Worth Division.

July 31, 1991.

Harry L. Cure, Jr., Cure & Ward, Fort Worth, Tex., for debtor/appellee.

Mark Ian Agee, Johnson & Gibbs, P.C., Dallas, Tex., for appellant.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

This action comes before the court as an appeal from an order entered by the United States Bankruptcy Court, Northern District of Texas, Fort Worth Division, the Honorable Massie Tillman presiding. The court, having reviewed the briefs of appellant, NCNB Texas National Bank ("NCNB"), and appellee, Hulen Park Place Ltd. ("debtor"), the record on appeal and applicable authorities, has determined that the bankruptcy court erred in confirming the plan of reorganization proposed by debtor.

### Jurisdiction

This is an appeal from an order confirming an amended plan of reorganization ("the plan") proposed by debtor in Case No. 489–43478–11 in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division. This court's jurisdiction exists pursuant to 28 U.S.C. § 158(a).

### Underlying Facts and Proceedings

Debtor is a Texas limited partnership, which borrowed $2,300,000.00 from NCNB's predecessor to finance the construction of the Hulen Park Place Apartments, located at 3602 Eldridge Street, Fort Worth, Texas ("the property"). Debtor executed a note made payable to NCNB's predecessor and a deed of trust to secure payment of the loan. NCNB is the owner and holder of the note and deed of trust and is debtor's largest secured creditor.

Debtor filed a voluntary petition for relief under chapter 11 of the United States Code ("the Bankruptcy Code") on October 16, 1989, to prevent foreclosure of NCNB's lien. Debtor filed its original disclosure statement and plan on February 13, 1990. After a hearing on the disclosure statement, debtor filed an amended disclosure statement and an amended plan on April 18, 1990. On April 20, 1990, the bankruptcy judge signed an order approving the amended disclosure statement and setting a hearing on confirmation of the amended plan. Following the confirmation hearing, the bankruptcy court signed an order on July 24, 1990, confirming the amended plan.

### Issues on Appeal

NCNB states that the following issues are presented on appeal:

#### Issue No. 1

Did the bankruptcy court err by finding that the plan provided a market rate of interest to NCNB, a secured creditor, and therefore provided NCNB with the present value of NCNB's collateral pursuant to 11 U.S.C. § 1129(b)(2)(A)(i)?

#### Issue No. 2

Did the bankruptcy court err by finding that the plan did not unfairly discrim-

inate against NCNB pursuant to 11 U.S.C. § 1129(b)(1)?

## Issue No. 3

Did the bankruptcy court err in finding that debtor had met its burden of proof in regard to financial feasibility of the plan pursuant to 11 U.S.C. § 1129(a)(11)?

## Issue No. 4

Did the bankruptcy court err by finding that the plan provided for adequate management of debtor's business, and therefore the plan was feasible pursuant to 11 U.S.C. § 1129(a)(11)?

## Issue No. 5

Did the bankruptcy court err by finding that the plan of reorganization did not violate the absolute priority rule contained in 11 U.S.C. § 1129(b)(2)(C)(ii), and by finding that a $100,000.00 loan to debtor by the principal of debtor constituted a "new value" exception to the absolute priority rule?

## Standard of Review

■ To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to *de novo* review. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1252 (5th Cir.1986). Findings of fact, however, will not be set aside unless clearly erroneous. *Memphis–Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 783 F.2d 1283, 1287 (5th Cir.1986). A finding is clearly erroneous, although there is evidence to support it, when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* The mere fact that this court would have weighed the evidence differently if sitting as the trier of fact is not sufficient to set aside the bankruptcy court's order if that court's account of the evidence is plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

With respect to mixed questions of law and fact, the court will review the factual premises under the clearly erroneous standard and review legal conclusions *de novo. Smith v. Associates Commercial Corp. (In re Clark Pipe & Supply Co.),* 893 F.2d 693, 697–98 (5th Cir.1990). For example, questions of equality of treatment, fairness and feasibility present questions of fact to be reviewed under the clearly erroneous standard. *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 787 F.2d 1352, 1357–58 (9th Cir.1986). On the other hand, whether a plan impairs a creditor's interest is a question of law to be reviewed *de novo. Id.*

## Whether the Plan is Fair and Equitable

The plan approved by the bankruptcy court provides that NCNB's secured claim will be amortized on a thirty-year basis and receive interest at a rate of nine percent (9%) per annum. At the plan confirmation hearing, the parties stipulated that the value of the property is $2,400,000.00. Accordingly, NCNB will receive monthly payments of $19,310.94 on its secured claim. NCNB complains, in Issue 1, that the rate of interest to be paid on its secured claim is not fair and equitable because it is not a market rate of interest.

■ To be confirmed over the objection of an impaired secured creditor, in this case NCNB, a plan of reorganization must not discriminate unfairly and must be fair and equitable with respect to the secured claim. 11 U.S.C. § 1129(b). "Fair and equitable" as used in the context of a cramdown means that, at a minimum, the secured creditor must receive the indubitable equivalent of his secured claim. *Sandy Ridge Development Corp. v. Louisiana National Bank (In re Sandy Ridge Development Corp.),* 881 F.2d 1346, 1349–50 (5th Cir.1989). In other words, mere technical compliance with § 1129(b)(2) does not assure that the reorganization plan is fair and equitable. *Federal Savings and Loan Insurance Corp. v. D & F Construction, Inc. (In re D & F Construction, Inc.),* 865 F.2d 673, 675 (5th Cir.1989). Rather, the court must consider the plan as a whole and all of the facts and circumstances sur-

rounding treatment of the creditor's claim, e.g., the plan's treatment of the creditor's rights under state law, the safety of his principal, and whether the creditor will receive, through the payment of interest, the present value of his secured claim. *Id.* Where a secured creditor receives neither his money nor the property upon which he has a lien, the debtor must show by clear and convincing evidence that the protection provided under the plan to the secured creditor is completely compensatory. *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2nd Cir.1935); *In re Future Energy Corp.*, 83 B.R. 470, 481 (Bankr.S.D.Ohio 1988).

To completely compensate a nonconsenting secured creditor, courts require payment of interest. As discussed in a leading treatise,

> [t]he appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

5 *Collier on Bankruptcy* ¶ 1129.03[i] at 1129–85 (L. King 15th ed. 1989). The preferred method of determining the appropriate market rate is the coerced loan theory, to wit: the rate that regional lenders on similar loans would actually charge persons similarly situated to the debtor on the open market, absent the fact of bankruptcy, considering the term of the loan, the amount and quality of the collateral, and other risk factors. *In re Shannon*, 100 B.R. 913, 936 (S.D.Ohio 1989).

█ A primary complaint of NCNB is that the plan does not provide a market rate of interest to be paid on the secured portion of its claim. The only evidence presented by debtor at the plan confirmation hearing on the subject was the testimony of debtor's principal, Mr. Rotbert, who was not designated or testifying as an expert. He testified only that he believed nine percent to be a fair rate of interest.

NCNB, on the other hand, presented two witnesses, including its expert, who testified that the market rate of interest for a substantially similar loan was ten to ten and one-half percent. NCNB also introduced exhibits in support of this testimony. Even Mr. Rotbert admitted, on cross-examination, that the current market rate of interest was ten and one-half percent.

█ The record simply does not support a finding that debtor met its burden of proof by clear and convincing evidence. On appeal debtor argues that a T-bill or other federal rate of interest is appropriate in this case because NCNB may be reimbursed by the Federal Deposit Insurance Corporation for any loss it incurs as a result of debtor's bankruptcy. This argument is simply without merit. The owner and holder of a secured claim is entitled to receive a market rate of interest if payment of that claim is to be deferred. The fact that the holder may receive assistance from some collateral source is wholly irrelevant to the bankruptcy proceedings.

### Whether NCNB has an Unsecured Claim

Issue 2 discusses NCNB's contention that the plan discriminates unfairly against its unsecured claim. Issue 5 discusses the plan's violation of the absolute priority rule. Whether either of these issues has merit depends upon the existence of an unsecured claim.

NCNB maintains that it has both a secured and an unsecured claim against debtor. Debtor appears not to dispute that a portion of NCNB's claim would be unsecured but for other collateral that debtor insists additionally secures NCNB's claim. The court is puzzled by the positions taken by the parties.

█ Pursuant to 11 U.S.C. § 506, a claim is secured to the extent of the value of the creditor's interest in the estate's interest in such property. The parties have stipulated that the property has a value of $2,400,000.00. The parties further agreed, in their agreed order for use of cash collateral, that as of November 28, 1989, debtor owed principal in the amount of $2,259,-

680.29 and interest in the amount of $142,-284.26. They further agreed that interest accrued at the rate of $681.00 per diem. To determine the amount of the debt as of the date of filing of the bankruptcy petition, October 16, 1989, the court need only back out interest accrued between October 17 and November 28, 1989. That amount is $28,283.00. Therefore, as of October 16, 1989, the total amount of NCNB's claim was $2,373,681.55. The date of the petition is the date that the secured status of creditors is determined. *In re Luchenbill*, 112 B.R. 204, 216 (Bankr.E.D.Mich.1990); *In re Beard*, 108 B.R. 322, 327 (Bankr.N.D.Ala. 1989). Accordingly, on October 16, 1989, NCNB was slightly over-secured. As an over-secured creditor, NCNB was entitled to interest to the extent that the value of the property exceeded the amount of its claim. 11 U.S.C. § 506(b); *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 372, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). The Bankruptcy Code does not provide for the accrual of interest beyond the point where the amount of the claim equals the value of the collateral. *Id.* Therefore, the amount of NCNB's claim could not exceed $2,400,-000.00.

At the time the petition was filed, NCNB was over-secured. It had no right to vote as partially secured and partially unsecured under the plan. Moreover, it has no complaint that the plan unfairly discriminates or violates the absolute priority rule. Therefore, Issues 2 and 5 are without merit.

### Whether the Plan is Feasible

In Issues 3 and 4, NCNB questions the bankruptcy court's finding that the plan is feasible. Because the court has already determined that the plan is not fair and equitable, there is no need for a detailed discussion of these issues. The court notes, however, that the burden was on debtor to demonstrate by clear and convincing evidence feasibility of the plan. *Clarkson v. Cooke Sales and Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir.1985).

1. Tr. 619 (1990) at 27–28.

At the conclusion of the plan confirmation hearing, the bankruptcy judge stated that "this plan of this Debtor and this apartment project are in a borderline situation insofar as whether or not this plan can be made to work." He added that "the scales tip ever so slightly" in favor of feasibility and that he would "rather gamble on this plan working."[1] The court questions whether feasibility has been demonstrated by clear and convincing evidence in this case.

For the reasons set forth herein, the bankruptcy court's order confirming the plan is reversed.