EASTERBROOK, Circuit Judge.
 

 Empire Wood Company, a partnership, entered bankruptcy in 1982. A plan of reorganization confirmed in 1984 promised payment of back taxes. But in 1985 Empire Wood collapsed without satisfying its tax obligations. The United States filed this suit in 1993, seeking to collect Empire Wood’s 1982 taxes from Lois and Daniel Wright, who it asserts were among Empire Wood’s general partners. (The Wrights deny being partners, but for current purposes we must assume that they were.) The district court dismissed the suit as untimely. 868 F.Supp. 1070 (S.D.Ind.1994).
 

 Eleven years is a long time, but Congress has given the Internal Revenue Service breaks denied normal creditors. Until 1990 the statute of limitations for the collection of tax debts was six years from assessment. That year Congress increased the period to ten years. Pub.L. 101-508, amending 26 U.S.C. § 6502(a). The extension became effective on November 5, 1990. Section 11317(e) of Pub.L. 101-508, 26 U.S.C. § 6323 note, provides that the longer period applies only to claims not then time-barred. The district court believed that the IRS’s claims were defunct by November 5, 1990. So they were — if measured from the dates of assessment in 1982 and 1983. But the IRS relies on 26 U.S.C. § 6503(h):
 

 The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making assessment or from collecting and—
 

 (1) for assessment, 60 days thereafter, and
 

 (2) for collection, 6 months thereafter.
 

 The IRS believes that it was prohibited by “title 11 of the United States Code” — that is, by the Bankruptcy Code of 1978 — from collecting the taxes during the bankruptcy and for as long as Empire Wood was making payments under the plan of reorganization. So much seems clear. The IRS was subject to the automatic stay; it filed a claim in the bankruptcy; its debt was scheduled; the terms of the plan of reorganization replaced the terms of the prior debts,
 
 In re Jartran, Inc.,
 
 886 F.2d 859 (7th Cir.1989); the IRS had to abide by the terms of the plan and could not swoop in to seize assets as soon as the plan had been confirmed. 11 U.S.C. § 1141(a). Cf.
 
 In re Penrod,
 
 50 F.3d 459 (7th Cir.1995). Not until Empire Wood turned turtle in 1985 could the IRS levy on the assessments. Less than six years remained before November 5, 1990. The district court allowed that under this line of reasoning the IRS could have proceeded against Empire Wood in 1993. But it thought § 6503(h) inapplicable to the Wrights.
 
 They
 
 were not debtors in bankruptcy, and the United States could have collected from them in 1983. The automatic stay does not apply to guarantors, sureties, insurers, partners, and other persons liable on the debt.
 
 National Tax Credit Partners, L.P. v. Havlik,
 
 20 F.3d 705, 707 (7th Cir.1994). Because the United States had never been “prohibited by reason of [the bankruptcy] case from making the assessment or from collecting” from the Wrights, the district court held, the claim against them had expired by November 1990. 868 F.Supp. at 1073-74.
 

 Confession and avoidance is the IRS’s method of dealing with this conclusion. It is willing to assume that it could have collected
 
 *563
 
 from the Wrights in 1983 and 1984. That this concession is warranted is not altogether clear. Indiana, where Empire Wood did business, apparently requires creditors to exhaust their efforts to collect from the partnership before turning to the partners.
 
 Thompson v. Wayne Smith Construction Co.,
 
 640 N.E.2d 408 (Ind.App.1994) (favorably discussing the South Carolina rule to this effect); Alan R. Bromberg & Larry E. Ribstein, 2
 
 Bromberg & Ribstein on Partnership
 
 5:59 (1994). The marshaling rule is not universally praised. See J. Dennis Hayes,
 
 The Revised Uniform Partnership Act: Some Comments on the Latest Draft of the RUPA
 
 19 Fla.St.U.L.Rev. 727, 733-34 (1992).
 
 Thompson
 
 hinted that Indiana would excuse exhaustion if the partnership were insolvent, 640 N.E.2d at 411 n. 5, which Empire Wood may or may not have been in 1983. (A person with positive net assets may be a debtor in bankruptcy.) We need not pursue the subject given the parties’ joint assumption; it turns out not to affect the decision.
 

 Having conceded that it could have collected from the Wrights in 1983, the IRS argues that the period of limitations for tax debts is unitary. To say that it has been extended for the taxpayer is to say that it has been extended for all persons who are secondarily hable — and partners in Indiana, which treats partnerships as entities,
 
 Husted v. McCloud,
 
 450 N.E.2d 491 (Ind.1983), are derivatively rather than directly liable. The argument entails two steps: first that the debt to be collected from the Wrights is for “taxes,” and so is governed by federal rather than state law, and second that the claim against derivatively hable persons remains ahve under federal law so long as the taxpayer itself is hable. The Wrights do not contest the first of these steps. Ever since
 
 United States v. Updike,
 
 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984 (1930), it has been understood that persons hable for someone else’s taxes owe “taxes” themselves unless federal law supphes a different designation, such as “penalty.” For recent illustrations see
 
 In re Norton,
 
 158 B.R. 834 (Bankr.D.Idaho 1993);
 
 In re Ross,
 
 122 B.R. 462 (Bankr.M.D.Fla.1990);
 
 In re McManis,
 
 70 B.R. 171, 175 (Bankr.E.D.Ky.1986). Just in case there were doubt, the general six-year statute for “debts” due the United States provides that it does not apply to “actions brought under the Internal Revenue Code or incidental to the collection of taxes imposed by the United States.” 28 U.S.C. § 2415(h).
 

 When multiple persons owe taxes on account of the same events, does the statute of hmitations govern the debt as a whole, or does it apply separately to each obhgor’s circumstances?
 
 Updike
 
 tells us that the governing principle is all-for-one, one-for-all. After a corporation dissolved and distributed its assets to investors, a change in the Internal Revenue Code increased the firm’s obligations. The Court first held that the transferees owed the dissolved firm’s taxes and were not “trustees” for the United States. Next it tackled the Commissioner’s argument that the statute of limitations — which concededly had expired for a suit against the corporation itself — did not start to run against the investors until the IRS demanded that they make good the firm’s obligations. The Court’s response was curt: “If by [statute] the period of limitations had run in favor of the corporation, it had run in favor of the transferees.... The clear intent of [the statute] ... was to designate the extent of time for the enforcement of the tax liability.” 281 U.S. at 494-95, 50 S.Ct. at 369. The statute under discussion in
 
 Updike
 
 was the predecessor to § 6502, and changes in the decades since 1930 do not affect this result.
 
 Updike
 
 did rely in part on a predecessor to 26 U.S.C. § 6901 that is limited to transferees of taxpayers’ assets. This statute said that transferees’ liability is to be “assessed, collected, and paid in the same manner and subject to the same provisions and limitations” as transferors’ liability. This reference to “limitations” is to substantive restrictions rather than the statute of limitations, but the Court took the provision as a signal that Congress wanted transferors and transferees treated similarly in other respects. In the end, however, that similarity was achieved by an interpretation of the statute of limitations, which has broader implications.
 

 
 *564
 
 Of course the
 
 holding
 
 of
 
 Updike
 
 is that if it is too late to sue the taxpayer, then it is too late to sue transferees derivatively hable for its taxes. Today the question is whether, if a suit against the taxpayer would be timely, then suit is also timely against persons derivatively hable. These questions could in principle have different answers, but
 
 United States v. Associates Commercial Corp.,
 
 721 F.2d 1094, 1096-98 (7th Cir.1983), holds that they do not. Like our case,
 
 Associates
 
 involved the apphcation of § 6503 to debts that for one reason or another could not be eohected from the taxpayer.
 
 (Associates
 
 involved § 6503(b), which suspends the period of limitations while the taxpayer’s funds are in the control or custody of a court; the difference between § 6503(b) and § 6503(h) is not important to our case.) Although
 
 Associates
 
 did not cite
 
 Updike,
 
 it employed the same general approach, concluding that suits against persons derivatively hable for taxes are timely, or not, according to the rules for timeliness of suits against taxpayers. It is hard to escape that conclusion, for both § 6502 and § 6503 establish rules for suing taxpayers; they do not set up separate periods for persons secondarily liable. Their structure presumes that there is only one period per tax
 
 debt,
 
 no matter how many different persons may be hable on the debt. Arrangements outside the statute could multiply the number of periods; for example, a particular investor may promise not to plead the statute of limitations, without extending the time to sue others who have not struck bargains with the IRS. But there is only one underlying period.
 

 At least, that is the law of our circuit.
 
 United States v. Harvis Construction Co.,
 
 857 F.2d 1360, 1364-65 (9th Cir.1988), declined to follow
 
 Associates.
 
 See also
 
 United States v. Hunter Engineers & Constructors, Inc.,
 
 789 F.2d 1436 (9th Cir.1986). The formal ground of decision in
 
 Harvis
 
 is that 26 C.F.R. § 31.3505—1(d)(1) disables the IRS from taking full advantage of the
 
 Updike
 
 principle when § 6503 suspends the statute of limitations for persons who have personal liability under 26 U.S.C. § 3505. (Actually,
 
 Harvis
 
 did not cite
 
 Updike
 
 any more than
 
 Associates
 
 had.)
 
 Associates
 
 thought the regulation invalid because in conflict with the statute;
 
 Harvis
 
 thought that the application of § 6503 suspensions to derivatively liable persons is an unprovided-for case that the Commissioner may resolve by regulation. The Wrights invite us to revisit the subject and overrule
 
 Associates.
 
 We decline;
 
 Har-vis
 
 does not persuade us. The regulation establishes six years as a presumptive period for suit without discussing suspension, tolling, or related doctrines, making it hard to understand as an effort to fill a gap in § 6503. At all events, the Wrights do not rely on 26 C.F.R. § 31.3505-1(d)(1), which addresses only lenders’ liability for withholding taxes under 26 U.S.C. § 3505.
 
 Harvis
 
 also observed that another portion of
 
 Associates
 
 had been KOd by
 
 Jersey Shore State Bank v. United States,
 
 479 U.S. 442, 107 S.Ct. 782, 93 L.Ed.2d 800 (1987), see 857 F.2d at 1365, but we are not aware of any principle that an error in one part of an appellate opinion deprives the whole opinion of precedential or persuasive force.
 

 Regulations do not affect the Wrights’ case one way or the other. Arguments about good policy also do not matter — though we confess to puzzlement at the IRS’s contention that federal law favors forswearing collection from partners until the partnership has run out of money. A credible threat to collect from the partners would improve the prospect of collecting from the partnership, to the benefit of the Treasury. Swift collection from partners also would preserve their right of subrogation, which becomes useless if the IRS does not dun them until the partnership’s assets have been dissipated. When deferral is sensible, most partners would waive their limitations defenses by contract to prevent execution on their assets, so the process would not necessitate nickel-and-dime levies. Delay is regrettable; partners’ accounts should not be open for a decade plus, as they are under the
 
 Associates
 
 understanding of § 6503. That, however, is grist for the legislative mill; the amendment to § 6502 in 1990 tells us that Congress does not place a high value on the interest in peace. The district court now must decide whether the Wrights were partners of Em
 
 *565
 
 pire Wood at the critical time and, if so, how much they owe.
 

 REVERSED.