**UNITED STATES of America**

v.

**Joseph COLVIN, et al.**

**No. 4:95–CV–620–E.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 16, 1996.

Jon E. Fisher, U.S. Department of Justice, Tax Division, Dallas, TX, for United States.

John D. Penn, Haynes and Boone, L.L.P., Fort Worth, TX, for Joseph Colvin.

John Lee, Andrews & Kurth, L.L.P., Houston, TX, for Aetna Life Insurance Company.

## MEMORANDUM OPINION AND ORDER

MAHON, District Judge.

The United States appeals from several orders entered by the bankruptcy court. For the following reasons, the Court affirms in part and reverses in part.

### I. BACKGROUND

Affiliated Food Stores, Inc. filed a Chapter 11 bankruptcy case in the Fort Worth Division of the Northern District of Texas on August 31, 1990 ("Affiliated I"). The case was transferred to the Dallas Division.

In June 1991, the bankruptcy court entered an order approving a claim of the Internal Revenue Service for about $2.3 million in pre-petition taxes and interest owed by Affiliated for the years 1980 through 1989. The order provided that this amount would constitute a priority claim against the bankruptcy estate in accordance with the Bankruptcy Code, 11 U.S.C. § 507(a)(7). On July 3, 1991, the bankruptcy court confirmed a plan of reorganization for Affiliated, which included the IRS's claim. The IRS assessed the taxes and interest Affiliated owed pursuant to the agency's claim on August 21, 1991.

Subsequently, the IRS and Affiliated agreed that the IRS's claim should be reduced to reflect a net operating loss incurred in 1990. On April 15, 1993, the bankruptcy court in Affiliated I entered an agreed order approving the parties' settlement and reducing the IRS's allowed claim to $1,082,823.50, to be paid out over a 54–month period.

Six days later, on April 21, 1993, Affiliated filed a new Chapter 11 bankruptcy case ("Affiliated II") in the Fort Worth Division. The IRS filed proofs of claim in Affiliated II in the amount of $1,038,181.50. The Liquidating Trustee's First Amended and Final Liquidating Plans of Reorganization listed the IRS as a creditor with a priority claim of $1,034,000. Under the Final Plan, which was approved on February 28, 1994, the Trustee retained the right to object to claims within 180 days of the Plan's effective date.

On August 26, 1994, 178 days after the Plan's effective date, the Trustee filed an objection to the IRS's claim on the ground that it was not entitled to priority status under § 507(a)(7). The IRS filed a written response in which it asserted that the objection was barred by *res judicata* and collateral estoppel, and that the time periods for priority status under § 507(a)(7) should be tolled pursuant to the bankruptcy court's equitable powers under 11 U.S.C. § 105(a) for the period during which the IRS was prevented from collecting on its claim due to the automatic stay in Affiliated I. The written response was in the form of a pleading, without argument or case citations. The IRS did not file a brief opposing the Trustee's objection to its claim.

On November 17, 1994, the bankruptcy court held a hearing on the Trustee's objection. During his argument, Jon Fisher, the IRS attorney, attempted to present copies of three cases on which he intended to rely, two which he had given to opposing counsel just

before the hearing, the third which he had included in his exhibits exchanged two days earlier. The Trustee objected, contending that the cases had not been included in a timely brief, as required by the court's local rules. Fisher replied that he was not aware of any rule requiring a brief to be filed in a proof of claim objection, and that he believed he was entitled to argue the law regardless of whether a brief had been filed. The court cited one of its "Local/Local Rules":

> All briefs are to be filed with the clerk's office, with a copy hand delivered to the Judge's chambers as follows: Movant's brief, five working days prior to the date of docket call. Respondent's brief, two working days prior to the date of docket call. The late filing of a brief will result in the brief not [being] considered by the Court in the scheduled hearing.

According to the court, this rule prevented a party from arguing any case not cited in a timely filed brief. Although the court indicated that the import of the rule was subject to some confusion, "[coming] up about once a month," it granted the Trustee's objection and prohibited Fisher from citing or arguing his cases, including the case that had been provided to the Trustee as an exhibit two days before the hearing.

During the hearing Fisher tried to expand on the argument in the IRS's written response regarding equitable tolling under 11 U.S.C. § 105, to urge that tolling should apply not only during the pendency of the automatic stay but also while the IRS was prevented from collecting on its claim by the terms of the reorganization plan in Affiliated I. Again the court granted an objection by the Trustee, and limited Fisher's argument and evidence to the literal terms of the issues raised in the IRS's written response to the Trustee's motion.

The Trustee argued that neither *res judicata* nor estoppel protected the priority of the IRS's claim, and that tolling the time periods required for a priority claim under § 507(a)(7) based on the automatic stay in Affiliated I would still not result in the IRS having a priority claim. During closing argument, however, the Trustee admitted that tolling based on the automatic stay in Affili-ated I would result in the 1988 and 1989 taxes—some $25,000—being a priority claim. Nevertheless, at the close of the hearing, the bankruptcy court concluded that the automatic stay had no bearing on the priority of the IRS's claim. As a result of that conclusion and the limitations it had placed on the IRS's argument, the Court did not consider at all whether equitable factors justified tolling based on either the automatic stay or the IRS's inability to collect during the pendency of the confirmed plan in Affiliated I. The court held that *res judicata* and estoppel were not applicable and denied priority status to the IRS's claim in its entirety.

On December 23, 1994, the bankruptcy court issued findings of facts and conclusions of law, and entered an order allowing the IRS an unsecured claim for $1,038,181.50 (December 23 Order). At the time appellate briefs were filed, it was expected that such unsecured claims would be paid out at about twelve percent of their full value. Thus, without priority, the IRS's claim would be worth only about $125,000.

The IRS filed a "Motion to Alter or Amend" the December 23 Order on January 3, 1995. Included with the motion was an affidavit of attorney Fisher stating that although he had participated in other cases before the Fort Worth bankruptcy court subsequent to its adoption of the briefing rule cited in the November 1994 hearing, none of the parties had filed briefs in those cases and counsel had been permitted to argue the law. Fisher further attested that until the November 1994 hearing, he was unaware that the bankruptcy court interpreted the briefing rule to prohibit parties, upon an objection, from arguing legal authorities not included in a previously filed brief. The Trustee responded that the meaning of the briefing rule was "well known" among those practicing before the Fort Worth bankruptcy court and that it had been applied on several occasions in the Affiliated II case; the Trustee did not assert that Fisher had been present on any occasions prior to the November 1994 hearing when the rule had been applied to prevent the oral argument of legal authority.

A hearing was held on the IRS's motion on April 11, 1995. After permitting the IRS to

make an opening argument, but without allowing the Trustee to respond, the bankruptcy court ruled *sua sponte* that the motion was brought under the wrong Bankruptcy Rule ("Rule") and the court therefore had no authority to consider the motion. The hearing was dismissed, and on June 21, 1995, the court entered an order denying the motion to alter or amend its December 23 Order.

The United States timely filed this appeal, citing errors in the December 23 order and the subsequent denial of the motion to alter or amend. In addition, the United States complains of the granting of leave for Aetna Life Insurance Company, the largest unsecured creditor in the Affiliated II case, to intervene in relation to the Trustee's objection to the IRS's claim.

## II. *ANALYSIS*

### A. *Denial of Motion to Alter or Amend*

Initially the United States challenges the bankruptcy court's denial of the IRS's motion to alter or amend. According to the court, the motion was improperly designated as one under Rule 9023, when in fact it was one that could only be brought under Rule 3008 or 11 U.S.C. § 502(j).

Appellees—the Trustee and Aetna—do not defend the legal basis of the bankruptcy court's ruling on the motion to alter or amend. Instead they contend that whether the bankruptcy court erred in denying the motion is irrelevant, because the underlying December 23 Order is before the Court and can be reviewed on its own merits. Before the Court can reach the earlier Order, however, it must determine whether the bankruptcy court properly refused to address the IRS's motion on the merits. If the court erred, then it may be appropriate to remand the case for the court to exercise its discretion to consider the special circumstances addressed by the motion. *See Gates v. L.G.*

*DeWitt, Inc.,* 528 F.2d 405, 410, *modified on other grounds,* 532 F.2d 1052 (5th Cir.1976).

The denial of a motion to alter or amend generally is reviewed under an abuse of discretion standard. *Edward H. Bohlin Co. v. Banning Co.,* 6 F.3d 350, 353 (5th Cir.1993). However, where the lower court has rejected such a motion based on an incorrect understanding of the law, review is the same as in other cases of legal error. *Huff v. Metropolitan Life Ins. Co.,* 675 F.2d 119, 122–23 and n. 5 (6th Cir.1982) (trial court erred in denying motion to reconsider based on incorrect view that it had no authority to determine relevant issue) (citing 6A J. Moore, Federal Practice ¶ 59.15[4] at 294 (1979)). *See also Gates,* 528 F.2d at 410 (denial of motion for new trial was in error where it was based on misunderstanding of applicable law).

The bankruptcy court based its denial of the IRS's motion on the court's interpretation of several Rules. Rule 9023, designated "New Trials; Amendment of Judgments," states that:

Rule 59 FR Civ P applies in cases under the [Bankruptcy] Code, except as provided in Rule 3008.

Fed.R.Civ.P. 59, incorporated by Rule 9023, requires that motions for new trial or to alter or amend a judgment be served not later than ten days after entry of the judgment. Rule 3008, "Reconsideration of Claims," provides that:

A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

In essence, the exception in Rule 9023 relating to Rule 3008 means that while motions under the former rule must be brought within ten days of judgment, those under the latter are given no explicit time limit. *See* Rule 9023, Advisory Comm. Note (1983).[1]

---

1. Section 502(j), also referred to by the bankruptcy court, states that:

A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. . . . .

While this statute authorizes reconsideration of the treatment of claims, it contains no suggestion that its citation is a necessary element in a motion seeking reconsideration. Inasmuch as the caselaw discussed below regarding motions for reconsideration of claims is equally silent about

Under Rule 8002, certain specified motions, when timely filed, toll the time for appeal until the entry of an order disposing of the motion. While motions to alter or amend under Rule 9023 are listed as having such a tolling effect, motions for reconsideration under Rule 3008 are not. Nonetheless, courts considering motions to reconsider the allowance or disallowance of claims have found that such motions, when filed within ten days of the order for which reconsideration was sought, amounted to motions to alter or amend under Rule 9023 and tolled the time for appeal. *See Matter of Aguilar,* 861 F.2d 873, 875 (5th Cir.1988); *In re Branding Iron Steak House,* 536 F.2d 299, 300 (9th Cir.1976); *Linton v. Grow,* 183 B.R. 838, 839–40 (S.D.Ind.1995). Although it appears that the movants in these cases entitled their motions simply as ones for "reconsideration," without referring to Rule 3008,[2] none of the courts suggested citation of that rule was essential to reconsideration of the bankruptcy court's treatment of the claim in question. To the contrary, the courts rejected a narrow reading of the motions based on their title or the rule cited and made clear that the motions should be construed in accordance with their timing and substance. *See, e.g., Branding Iron Steak House,* 536 F.2d at 301 n. 1 (rejecting "hypertechnical" interpretations of the Rules). *See also Matter of Fellows,* 19 F.3d 245, 246 (5th Cir.1994) (regardless of caption, any motion questioning correctness of a judgment is treated as one under Fed.R.Civ.P. 59(e) or, in bankruptcy case, Rule 9023).

■ The IRS's motion to alter or amend was filed within ten days of the December 23 Order. Consequently, the motion was effectively one under Rule 9023, tolling the time in which to file an appeal, and the reference in the motion to that rule was proper. The bankruptcy court's refusal to consider the motion on the merits because it did not reference Rule 3008 was based on an erroneous view of the law and its order denying the motion must be vacated. Because of the interrelation between the motion to alter or amend and the December 23 Order, the Court will address the latter before instructing the bankruptcy court as to further proceedings.

### B. December 23 Order

#### 1. IRS Tax Claim

Before discussing the government's points of error concerning the December 23 Order, it will be helpful to outline the nature of the IRS claim in issue. The parties have agreed that the debtor owes the IRS a total of $1,038,181.50. According to the IRS's amended proof of claim filed in Affiliated II, that amount reflects tax and interest based on the following tax periods:

| Tax Period | Tax Due | Interest to Petition Date |
|---|---|---|
| 12/31/83 | 0.00 | 161,797.57 |
| 12/31/84 | 0.00 | 5,262.24 |
| 12/31/86 | 449,808.53 | 395,511.29 |
| 12/31/88 | 11,480.00 | 546.87 |
| 12/31/89 | 13,775.00 | 0.00 |

The amended proof of claim states that the sums due constitute priority claims under 11 U.S.C. § 507(a)(7).[3]

Put simply, the relevant terms of § 507(a)(7) provide that income taxes due within three years, or assessed within 240 days, of the bankruptcy petition are entitled to priority.[4] It is undisputed that Affiliated's

---

the need to cite either Rule 3008 or this statute, only Rule 3008 will be referred to in the text.

**2.** Indeed, the motion for reconsideration in *Linton* was designated as one under Rule 9024.

**3.** Subsequent to the filing of Affiliated II, the Bankruptcy Code was amended and the provisions of § 507(a)(7) are now contained, unchanged, in § 507(a)(8). For the sake of consistency, this opinion will continue to refer to 507(a)(7).

**4.** Section 507(a)(7), listing the order in which certain expenses and claims have priority in a bankruptcy, states in relevant part:

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition[.]

tax return for its 1989 taxes would have been due on March 15, 1990, more than three years before the Affiliated II petition was filed on April 21, 1993. Similarly, there is no question that the IRS assessed all the listed taxes on August 21, 1991, more than 240 days before the Affiliated petition. Consequently, the IRS's claim is not entitled to priority under the literal terms of § 507(a)(7). According to United States, however, the claim, which was accorded priority status under § 507(a)(7) in Affiliated I, retained that status in Affiliated II as a matter of law or should be given priority based on equitable factors.

### 2. *Res Judicata and Judicial Estoppel*

The United States complains that the bankruptcy court erred when it held that *res judicata* and judicial estoppel did not bar the Trustee's objection to the priority of the IRS's claim. Albeit for somewhat different reasons than those cited by the bankruptcy court, the Court finds no error was committed on these issues.

■ The requirements for application of *res judicata* are well established: (1) the parties in the later action must be identical or in privity with those in the earlier action; (2) the judgment in the earlier action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases. *E.g., United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir.1994).

> If these conditions are satisfied, claim preclusion prohibits either party from raising any claim or defense in the later action that was or *could have been* raised in support of or in opposition to the cause of action asserted in the prior action.

*Id.* (emphasis in the original). *See also In re Laing*, 31 F.3d 1050, 1051–52 (10th Cir.1994) (*res judicata* barred relitigation of dischargeability of specific debt in second bankruptcy where debtor could have and actually raised issue in earlier case).

The Court agrees with the United States that each of the four prerequisites of *res judicata* are met with regard to the IRS's claim for back taxes against Affiliated. The United States has wholly ignored the remaining consideration, though. That is, although the Trustee in Affiliated I could have contested the amount of taxes owed and even their priority with relation to the filing date in Affiliated I, he had no reason or ability to challenge the priority of those taxes based on the petition date in Affiliated II, which was still in the future. As a result, *res judicata* does not bar the Trustee in Affiliated II from raising as a defense to the IRS's claim of priority the fact that the taxes in question were not due or assessed close enough to the petition date in Affiliated II to be entitled to priority under § 507(a)(7).

■ This conclusion is consistent with the common understanding that § 507(a)(7) was intended to give the government a reasonable but not unlimited time to pursue collection efforts. *See, e.g., In re West*, 5 F.3d 423, 426 (9th Cir.1993), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994) (discussing purpose of priority periods). If, as the United States argues, priority status in one bankruptcy meant priority in any future bankruptcy of the same debtor, the IRS could take no action for a number of years to collect on its priority claim in the first action, only to reassert a priority claim in a new bankruptcy, totally unfettered by the time limits of § 507(a)(7). In no case has the earlier priority status of a tax claim been found, through application of *res judicata*, to bar litigation of the claim's priority status in a later-filed bankruptcy. Indeed, courts considering the issue of priority have explicitly or implicitly recognized that the priority status of a claim must be determined independently in each new bankruptcy. *See In re Larsen*, 59 F.3d 783 (8th Cir.1995) (administrative expenses entitled to priority in one bankruptcy not entitled to priority in later bankruptcy); *In re Montoya*, 965 F.2d 554 (7th Cir.1992) (although IRS claim had priority in first bankruptcy, priority in later bankruptcy had to be newly determined based on applicable time limits and tolling); *In re Conston*, 181 B.R. 769, 770 (D.Del.1995) (same).

■■ The United States argues, in a somewhat different vein, that *res judicata* should be applied to its claim because the bankruptcy court applied that principle to hold that the reorganization plan in Affiliated I barred the reassertion of several claims addressed in the earlier bankruptcy. In addition, the government suggests that Trustee's support of the application of *res judicata* to those other claims judicially estops the Trustee from arguing that *res judicata* does not apply in the case of the IRS's claim. This argument fails to acknowledge the different posture of the claims to which *res judicata* was applied. In the two instances mentioned in this appeal, creditors whose claims were denied or discharged in Affiliated I attempted to reassert those claims in Affiliated II. Since the four elements of *res judicata* were met, *and* the creditors had an opportunity to raise any arguments in support of their claims in the earlier action, *res judicata* barred relitigation of those claims. That conclusion does not change the analysis of the IRS's claim. Further, in light of the differences in the claims involved, the Trustee's assertion of *res judicata* with regard to other claims cannot be held to judicially estop him from arguing that *res judicata* does not establish the priority of the IRS's claim.

The bankruptcy court did not err on the issues of *res judicata* and estoppel.

### 3. Bankruptcy Court's Limitations on IRS's *Argument and Presentation of Evidence*

The United States contends that the bankruptcy court improperly prevented the IRS from arguing the law and presenting testimony based on a "Local/Local Rule" that is unclear and unevenly applied. The Court agrees.

The IRS's written response to the Trustee's objection urged the bankruptcy court to exercise its equitable powers under 11 U.S.C. § 105(a) to toll the priority time periods in § 507(a)(7). The response expressly referred to the IRS's inability to collect the taxes owed during the time the automatic stay was in effect in Affiliated I. At the hearing on the Trustee's objection, IRS counsel Fisher offered cases and attempted to argue and present testimony on this and a related second ground for tolling: that the IRS had also been prevented from collecting by the binding terms of the confirmation plan in Affiliated I. The bankruptcy court ruled that Fisher could not refer to any cases that had not been included in a brief timely filed in accordance with a "Local/Local Rule"; the Court entirely barred any argument or evidence on the second tolling ground since that ground had not been expressly included in the IRS's written response.

■ A lower court's application of local rules in disposing of motions is reviewed for abuse of discretion. *Victor F. v. Pasadena Indep. Sch. Dist.*, 793 F.2d 633, 635 (5th Cir.1986). Here, the United States does not challenge the validity of the bankruptcy court's "Local/Local Rule" for purposes of setting a briefing schedule. Rather, the question is whether the court's reliance on that rule to prevent Fisher from arguing case law not included in a brief was reasonable. Also of concern is whether the court abused its discretion in refusing to hear argument and evidence on an issue not explicitly raised in the IRS's written response.

■■ In considering these matters, it is instructive to examine the analysis applied in reviewing comparable discretionary determinations, particularly those where courts have limited a party's ability to present its case due to its failure to comply with an order or rule. Where a court has excluded expert testimony on the basis of such a failure, four factors are relevant:

(1) the importance of the excluded testimony, (2) the explanation of the party for its failure to comply with the court's order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice.

*E.E.O.C. v. General Dynamics Corp.*, 999 F.2d 113, 115 (5th Cir.1993). Especially where the excluded evidence is crucial, the party's noncompliance was not unreasonable, and any prejudice could be cured by a continuance, a continuance is preferable to exclusion as the means for dealing with a party's attempt to offer a witness or other evidence

in noncompliance with an order or rule. *See id.* at 116.

 Similar considerations govern review of a dismissal based on noncompliance with court orders or rules. For example, lesser sanctions than dismissal are favored where the attorney, not the client, is responsible for the neglect involved. *Marshall v. Segona*, 621 F.2d 763, 768 (5th Cir.1980). And dismissal is inappropriate where a party's negligence results from confusion or sincere misunderstanding of the court's orders or rules. *See id.* In fact, dismissal is appropriate only when a party's noncompliance with an order or rule results from willfulness or bad faith. *See General Dynamics,* 999 F.2d at 117.

 An examination of these considerations persuades the Court that the bankruptcy court abused its discretion in this instance. First, even the Trustee acknowledges that the IRS's tolling argument based on the binding effect of the reorganization plan in Affiliated I is essential to establish its right to a priority claim. As discussed above, the IRS's *res judicata* and estoppel theories are without merit. And although the Trustee conceded that tolling based on the automatic stay in Affiliated I might entitle the IRS to priority with respect to the 1988 and 1989 taxes, those totalled some $25,000, a tiny fraction of the full claim. Indeed, the fraction was so small that the bankruptcy court disregarded it and concluded that tolling based on the automatic stay would have no effect on priority. Only the IRS's alternative tolling argument could effectively protect its claim. The bankruptcy court's refusal to hear argument or evidence on that theory was thus equivalent to a dismissal of the IRS's claim for priority. *See id.* (exclusion of expert testimony essential to establish claim tantamount to dismissal of that claim).

Second, no court rule or order clearly warned Fisher that his failure to file a brief or amend the IRS's written response would result in his inability to present argument and evidence in the hearing on the Trustee's objection. It is undisputed that Fisher previously had participated in hearings where no briefs were filed and had never been limited in his oral argument. The "Local/Local" briefing rule is silent with regard to oral argument and evidence.[5] Since the federal and local Rules state that no response to a motion on a contested matter is necessary unless ordered by the court,[6] and the bankruptcy court's "Local/Local Rules" do not require that briefs be filed in response to a contested matter such as a trustee's objections to a claim, a party might well believe that the briefing rule is simply irrelevant to the scope of oral argument and evidence that can be presented at a hearing on a contested matter. Even the bankruptcy court acknowledged that its interpretation of the rule to prevent oral argument "comes up" on a regular basis, suggesting that litigants are uncertain as to the rule's import. Under the circumstances, Fisher cannot be considered at fault for his lack of awareness of the bankruptcy court's interpretation of the briefing rule and his consequent failure to protect the IRS's interests by filing a brief. In addition, while it might have been preferable for Fisher to amend the IRS's written response to include his second basis for tolling, his belief that the latter ground was only an expansion upon the one in the response was not unreasonable. Both grounds were specific examples of the more general proposition that the priority time periods of § 507(a)(7) should be tolled for *any* period during which the IRS is prevented by law from collecting on its claim. Nothing in the record indicates that Fisher's failure to include the second tolling ground in a response or brief was done in bad faith or to gain a strategic advantage over the Trustee.

---

5. The relevant part of the text of the rule is set forth on page 3, above. Although the validity of the rule, per se, is not at issue here, the Court notes its reservations about a rule that, taking into account the time for mailing, can result in a party having less than a day to review and respond to a written brief. Considering the limited time to file a responsive brief, a party understandably may find it necessary in the hearing to present arguments it failed to include in its brief.

6. *See* Rule 9014 and Rule 9014 of the Local Bankruptcy Rules for the Northern District of Texas.

The third and fourth factors also do not justify the bankruptcy court's action. There is no evidence that Fisher's failure to brief his argument or amend the response caused any prejudice to the Trustee. Fisher provided the Trustee with a copy of one of his cases two days before the hearing, and with copies of the other two shortly before it convened. If the Trustee needed additional time to read the cases or conduct additional research, a short continuance could have been granted. In fact, the Trustee's counsel's statements during the hearing suggest he understood the additional basis for tolling and simply hoped to keep it out with a technical objection.

The Court hardly intends to encourage the practice of unbriefed oral argument. Nevertheless, considering that such a practice was not clearly prohibited by the bankruptcy court's "Local/Local Rules" or orders, that any resulting prejudice could easily have been cured by a short continuance, and that by penalizing the "offending" attorney the bankruptcy court deprived his client, the IRS, of a million dollar claim, the Court concludes that the bankruptcy court's refusal to consider the proffered oral argument and evidence was an abuse of discretion.

### 4. Equitable Tolling

The United States asserts that the bankruptcy court erred in refusing to equitably toll the time limits in § 507(a)(7) so as to give priority to the IRS's claim. Despite the parties' suggestion that the Court can reach the merits of this issue, Fifth Circuit authority and the stance of this case prevent the Court from doing so.

With only one or two exceptions, courts addressing the issue have held that the time periods for priority under § 507(a)(7)(i) and (ii) should be tolled during intervals when the IRS is legally prohibited from collecting the funds owed. See, e.g., In re Taylor, 81 F.3d 20, 22–25 (3rd Cir.1996); West, 5 F.3d at 426–27; In re Richards, 994 F.2d 763, 765–66 (10th 1993); Montoya, 965 F.2d at 557–58; In re Eysenbach, 183 B.R. 365, 368–69 (W.D.N.Y.1995). But see In re Macko, 193 B.R. 72, 75–76 (Bankr.M.D.Fla.1996) (finding evidence insufficient to justify equitable toll-

ing). Although the majority of cases on this issue have involved the time during which the automatic stay was in effect in an earlier bankruptcy, the reasoning applied has not been limited to that circumstance. One court has explicitly applied tolling to a period when the IRS's claim was temporarily disallowed and therefore uncollectible. Montoya, 965 F.2d at 557–58. Another has addressed the specific situation here, finding that tolling should include the time that a reorganization plan limits the IRS's ability to seize the debtor's assets to satisfy its claim. United States v. Wright, 57 F.3d 561, 562 (7th Cir. 1995).

Most courts applying tolling have reasoned that it is required by the interaction of two parallel provisions in the Bankruptcy and Internal Revenue Codes. E.g., West, 5 F.3d at 426–27; Montoya, 965 F.2d at 557–58. The Fifth Circuit has rejected reliance on one of those provisions, however, leaving tolling without an express statutory basis. Matter of Quenzer, 19 F.3d 163, 165 (5th Cir. 1993). In Quenzer, the court indicated that tolling might be appropriate under the bankruptcy's general equitable powers granted by 11 U.S.C. § 105(a). Other courts have found tolling appropriate under § 105. See Richards, 994 F.2d at 765–66; Solito v. United States, 172 B.R. 837, 839–40 (W.D.La.1994). Quenzer refused to find tolling warranted in the case at hand, though, because the issue was raised for the first time on appeal. The court noted that whether to exercise equitable powers is a discretionary, fact-based decision best made in the first instance by the trial court. 19 F.3d at 165.

Here, due to the application of its "Local/Local Rule," and then of an erroneous legal standard with regard to the IRS's motion to alter or amend, the bankruptcy court did not permit the parties to fully argue the law or develop the facts regarding the suitability of tolling. At present there is no evidence that the IRS was negligent in protecting its claim against Affiliated, and the bankruptcy court could reasonably conclude that Affiliated's filing of a new petition only six days after reaffirming the agency's priority claim should not be permitted to reduce that claim to a fraction of its full

value. If the periods in § 507(a)(7) were tolled for the time the reorganization plan in Affiliated I was in effect, then the IRS's assessment would fall within 240 days of the filing of Affiliated II and its claim would be entitled to priority. The bankruptcy court's rulings deprived the Trustee of an opportunity to fully present any countervailing argument or evidence, however, rendering the current record insufficient for this Court to fairly determine whether tolling should apply.

Accordingly, the case must be remanded to the bankruptcy court for further proceedings concerning the appropriateness of equitable tolling. Inasmuch as the parties have already briefed this issue in the context of the IRS's motion to alter or amend, the Court may rely on those briefs, or may require that new ones be filed, limited to the issue of equitable tolling. The court shall also hold a hearing at which the parties can present oral argument and evidence.

### C. *Intervention by Aetna*

On February 3, 1995, Aetna filed a motion to intervene in the Trustee's objection to the priority of the IRS's claim. The bankruptcy court granted the motion on April 3, 1995. The United States argues that it was error to grant the intervention.

Aetna moved to intervene as of right under Fed.R.Civ.P. 24(a) or, alternatively, permissively under Fed.R.Civ.P. 24(b). The bankruptcy court's order granting the motion does not state which form of intervention was allowed. Because the prerequisites for permissive intervention are less stringent than those for intervention as of right, the Court looks only to whether granting permissive intervention was improper under the circumstances.

The requirements for permissive intervention are minimal: the applicant's claim or defense and the main action must have a question of law or fact in common; in determining whether to grant permissive intervention, the court should consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b). Per-

missive intervention is entirely discretionary with the trial court. *See Kneeland v. National Collegiate Athletic Ass'n,* 806 F.2d 1285, 1289 (5th Cir.), *cert. denied,* 484 U.S. 817, 108 S.Ct. 72, 98 L.Ed.2d 35 (1987).

The United States does not contest that the first element of permissive intervention is met. It argues that Aetna's motion, filed a month after the IRS filed its motion to alter or amend, was untimely. However, the government has not pointed to any delay or other prejudice caused by the intervention. Considering the discretionary standard involved and the absence of any evidence of prejudice, the Court concludes that the bankruptcy court did not commit error in permitting Aetna to intervene.

### III. *CONCLUSION*

Based on the foregoing, the Court ORDERS that the bankruptcy court is AFFIRMED insofar as it held that: (1) neither *res judicata* nor estoppel bar the Trustee's objection to the priority of the IRS's claim; and (2) Aetna could intervene in the Trustee's objection to the IRS's claim. The bankruptcy court's orders are VACATED to the extent they deny the IRS's motion to alter or amend and the IRS's request that the time periods in § 507(a)(7) be equitably tolled. The case is REMANDED to the bankruptcy court for further proceedings to determine whether equitable tolling should be applied to the IRS's claim.