**In re AFFILIATED FOOD STORES, INC., Debtor.**

**UNITED STATES of America, Appellant,**

v.

**Joseph COLVIN, Liquidating Trustee of Affiliated Food Stores, Inc., et al., Appellees.**

No. 4:98–CV–015–A.

United States District Court, N.D. Texas, Fort Worth Division.

March 20, 1998.

Jon E. Fisher, U.S. Department of Justice, Tax Division, Dallas, TX, for appellant.

John David Penn, Haynes & Boone, Fort Worth, TX, for Affiliated Food Stores, Inc.

John R. Lee, Andrews & Kurth, Houston, TX, for Aetna Life Insurance Company.

## MEMORANDUM OPINION and ORDER

McBRYDE, District Judge.

This action comes before the court as an appeal from an order sustaining liquidating trustee's objection to claims of Internal Revenue Service of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, the Honorable Massie Tillman presiding. The court, having considered the briefs of appellant, United States of America, and appellees, Joseph Colvin, Liquidating Trustee of Affiliated Food Stores, Inc., ("Trustee") and Aetna Life Insurance Company ("Aetna"), the record on appeal, and applicable authorities, finds that the order should be reversed and the matter remanded to the bankruptcy court for further consideration.

### I.

#### Jurisdiction

This is an appeal from an order signed and entered November 26, 1997, sustaining the Trustee's objection to claims of appellant, and findings of fact and conclusions of law signed and entered December 11, 1997, supporting same. The court's jurisdiction exists pursuant to 28 U.S.C. § 158(a).

### II.

#### Pertinent Facts and Underlying Proceedings

On August 31, 1990, Affiliated Food Stores, Inc. ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code. The case was filed in the Fort Worth Division of the Northern District of Texas, but was transferred to the Dallas Division, where it was assigned Case No. 390–36169–RCM–11. According to the Trustee, the bankruptcy was filed as a result of the actions of Debtor's revolving credit lender, First City Texas–Dallas, which set off the unpaid amount of the Debtor's revolving line of credit against its deposits. The set-off caused Debtor's checks to its suppliers to be dishonored and its trade credit to be cut off.

In June 1991, the bankruptcy court entered an order granting appellant a priority claim of almost 2.3 million dollars representing pre-petition income taxes and interest due for the years 1980, 1983, 1984, 1986, 1987, 1988, and 1989. On July 3, 1991, Debtor's plan of reorganization was confirmed. On August 21, 1991, appellant assessed taxes in the amount of its priority claim. Appellant and Debtor later reached an agreement that a net operating loss incurred in the last quarter of 1990 could be carried back to earlier tax years to reduce Debtor's tax liabilities. On April 15, 1993, the bankruptcy court entered an agreed order reducing the amount of appellant's priority claim by approximately $750,000.00. Debtor made quarterly payments pursuant to the confirmed plan. Appellant received approximately $836,000.00.

On April 21, 1993, Debtor filed a second voluntary Chapter 11 petition in the Fort Worth Division of the United States Bankruptcy Court for the Northern District of Texas, which was assigned Case No. 493–41544–MT–11. According to the Trustee, bankruptcy was filed because of Debtor's deteriorating financial performance. (The Trustee was appointed on April 27, 1993.) Appellant filed proof of claim number 655, which was amended and replaced by claim number 755, in the amount of $1,038,181.50. Appellant sought priority treatment of its claim. The Trustee's first amended and final liquidating plans of reorganization listed appellant as a creditor with a priority claim of $1,034,000.00.[1] Under the final plan, which

---

1. This fact was recited by Judge Mahon in his December 16, 1996, memorandum opinion and order on an earlier appeal by appellant. *See also, e.g.,* Exhibit G to First Amended Disclosure Statement (Appeal Tr. Ex. 7). Judge Tillman nevertheless found that "[n]either the Final Plan nor its predecessors nor disclosure statements related thereto classified the IRS as having a

was approved on February 28, 1994, the Trustee retained the right to object to claims within 180 days of the plan's effective date.

On August 26, 1994, 178 days after the plan's effective date, the Trustee filed an objection to appellant's claim on the ground that it was not entitled to priority status under 11 U.S.C. § 507(a)(7).[2] Appellant responded, asserting that the objection was barred by *res judicata* and collateral estoppel and that the time periods for priority status under § 507(a)(7) should be tolled pursuant to the bankruptcy court's equitable powers under 11 U.S.C. § 105(a).

On December 23, 1994, the bankruptcy court issued findings of fact and conclusions of law and entered an order granting the Trustee's objection to appellant's claim and allowing appellant an unsecured claim in the amount of $1,038,181.50. Appellant filed a motion to alter or amend, which was denied, then appealed the bankruptcy court's decision.[3]

The appeal was heard by the Honorable Eldon B. Mahon. By memorandum opinion and order of December 16, 1996, Judge Mahon upheld the bankruptcy court's ruling in part,[4] but remanded the action so that the bankruptcy court could conduct a hearing to determine whether equitable tolling was appropriate. *United States v. Colvin,* 203 B.R. 930 (N.D.Tex.1996). Judge Mahon noted that "[w]ith only one or two exceptions, courts addressing the issue have held that the time periods for priority under 507(a)(7)(i) and (ii) should be tolled during intervals when the IRS is legally prohibited from collecting the funds owed." 203 B.R. at 940 (citations omitted).

On remand, the parties engaged in discovery and filed briefs with the bankruptcy court. On October 29, 1997, the bankruptcy court conducted an evidentiary hearing on appellant's request for equitable tolling. By

order signed and entered November 26, 1997, the bankruptcy court sustained the Trustee's objection to appellant's claim and ruled once again that appellant's claim in the amount of $1,038,181.50 was allowed as an unsecured claim. On December 11, 1997, findings of fact and conclusions of law were signed and entered. This appeal followed.

## III.

### *Issues on Appeal*

Appellant raises 43 issues on appeal, which are condensed into five major topics. She argues that the bankruptcy court erred: (1) when it refused to toll the time periods for determining whether Debtor's unpaid tax liability was entitled to priority treatment; (2) when it failed to hold that the Trustee's conduct toward appellant was grossly inequitable; (3) when it accepted the Trustee's contrived allegations of inequitable conduct by appellant; (4) when it accepted the Trustee's attempts to construct arguments against tolling based upon how appellant applied payments she received after the first bankruptcy proceeding; and (5) in accepting carte blanche the Trustee's proposed findings of fact and conclusions of law.

## IV.

### *Standard of Review*

To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to *de novo* review. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1252 (5th Cir.1986). Findings of fact, however, will not be set aside unless clearly erroneous. *Memphis–Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 783 F.2d 1283, 1287 (5th Cir. 1986). A finding is clearly erroneous, although there is evidence to support it, when

---

priority tax claim in Class 3 of the Final Plan." Findings at ¶ 14.

**2.** Section 507(a)(7) has been renumbered to be § 507(a)(8).

**3.** Prior to the appeal, Aetna filed a motion to intervene in the Trustee's objection to the priori-

ty of appellant's claim. That motion was granted.

**4.** In particular, Judge Mahon determined that the Trustee's objection to priority of appellant's claim was not barred by *res judicata* or collateral or judicial estoppel and that Aetna's intervention was proper.

the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* The mere fact that this court would have weighed the evidence differently if sitting as the trier of fact is not sufficient to set aside the bankruptcy court's order if that court's account of the evidence is plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Since equity considerations are largely fact-driven, the bankruptcy court's refusal to grant equitable relief is reviewed on an abuse of discretion standard. *Quenzer v. United States (In re Quenzer),* 19 F.3d 163, 165 (5th Cir.1993).

## V.

### *The Bankruptcy Court's Findings*

■ Appellant complains about the bankruptcy court having adopted wholesale, with minor cosmetic changes, the proposed findings of fact and conclusions of law prepared by the Trustee. She recognizes that the practice is not per se a ground for reversal, *see, e.g., Triad Electric & Controls, Inc. v. Power Systems Eng'g, Inc.,* 117 F.3d 180, 187 (5th Cir.1997); *Marine Shale Processors, Inc. v. EPA,* 81 F.3d 1371, 1386 (5th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 682, 136 L.Ed.2d 607 (1997), but urges that, in this case, the bankruptcy court adopted a number of clearly erroneous findings, thus abandoning its duty to make independent findings.

The court agrees that certain of the bankruptcy court's findings are not supported by the record. The mistakes range from the fairly insignificant, e.g., finding number 3 that the Trustee filed objections to *thousands* of claims, to the more serious, e.g., findings number 14, 15, and 16 that the plan, its predecessors, and disclosure statements were not misleading. The first amended disclosure statement for the Trustee's first amended liquidating plan of reorganization and Trustee's first amended liquidating plan of reorganization, Appeal Tr. Ex. 7, clearly would lead one to believe that appellant's

claim falls under Class 3. In particular, Exhibit G thereto specifically lists the sum of $1,034,000.00 owed to appellant as falling under the heading "Administrative/Secured/Priority Claims." To make such a disclosure and then to maintain that appellant's claim was not a priority claim is highly misleading.

■ Other findings suggest that incorrect standards were applied. For example, findings number 13 and 19 indicate a belief by the bankruptcy court that appellant had the burden to explain, and justify, the timing of the conduct of its audit, even though the audit admittedly occurred during the three years allowed by law. *Badaracco v. Commissioner,* 464 U.S. 386, 391–92, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984); *Lilly v. United States (In re Lilly),* 194 B.R. 885, 888 (Bankr.D.Idaho 1996). Even if the timing of the conduct of the audit were a proper factor to be weighed in the balancing of equities, appellant had no burden to justify the timing—rather, the burden would be on the opposing parties.[5] Likewise, findings number 20 and 21 have no independent significance, because interest is subject to the same priority as the underlying tax. *Jones v. United States (In re Garcia),* 955 F.2d 16, 17 (5th Cir.1992). The manner in which appellant applied payments made pursuant to the first bankruptcy plan simply has no bearing on whether equitable tolling is appropriate.

■ The bankruptcy court's findings with regard to appellant's alleged inequitable conduct are inappropriate. The record does not support finding number 38 that appellant made "an untrue statement which [she] knew to be untrue when it was made" when she alleged that the carry-back of net operating losses resulted in a reduction of her claim "of over 50%." The record establishes without dispute that appellant's counsel made a mathematical error of absolutely no significance. Whether appellant's claim was reduced by 10% or 90%, the fact is that the claim has not been paid in full. The incorrect statement has no relevance in the weighing of equities. Further, the findings, number 39 and 40, that appellant has admitted she has an "Allowed Class 8 Claim" are

---

**5.** The court notes that the record reflects that the failure of Debtor to cooperate by producing requested records caused the audit to take longer than it otherwise might have taken.

clearly erroneous. A review of the record discloses that appellant has vigorously argued that her claim is entitled to priority status and that, at the very least, such claim is an allowed unsecured claim under Class 8. Findings number 41 and 43, regarding appellant's case citations, incorrectly reflect that appellant did not accurately describe the cases she discussed and intended to mislead the bankruptcy court by such discussion. Moreover, those are not factors that should be considered in a weighing of equities. Finding number 42 is conclusory and does not identify any fact upon which appellant's equitable tolling claim was based that she withheld from discovery. As to finding number 44, the conduct of one party might be relevant and the conduct of another irrelevant at any point in time. Furthermore, the subject of that finding is not relevant to the weighing of equities.

## VI.

### *The Need for Remand*

Because of the volume of the fact-findings, and the approach used, the court cannot determine what significance the bankruptcy court attached to any of the findings. Nothing in the record shows that appellant did anything that would preclude her from being entitled to benefit from equitable tolling. Moreover, the bankruptcy court does not address the key issue, which is whether equitable tolling should apply where the Internal Revenue service has had no opportunity to collect the taxes owed.[6]

In light of the court's determination that a number of the findings of the bankruptcy court with regard to the plan, its predecessors and disclosure statements were clearly erroneous, a reassessment of the Trustee's behavior is in order. The court is not itself making findings in this regard, but suggests that the bankruptcy court do so. The court is concerned about the timing of the Trustee's actions, that is, leading appellant to believe she had a priority claim, then filing on the 178th day an objection to such claim. The court is also concerned about the misleading arguments made by the Trustee in

the court below and in this court. For example, the Trustee has demonstrated that he is wont to take statements out of context and to attribute to his opponent arguments that simply are not being made. For example, the Trustee suggests, at page 19 of his brief, that appellant is relying on 11 U.S.C. § 108, when there is no question that appellant recognizes that, in light of *Quenzer*, only § 105 is at stake. Further, at page 20 of his brief, the Trustee suggests that appellant is calling for a "per se rule" when such is not the case. These are but two examples.

## VII.

### *ORDER*

The court ORDERS that the order sustaining liquidating trustee's objection to claims of Internal Revenue Service be, and is hereby, reversed and that this action be, and is hereby, remanded to the bankruptcy court to determine whether equitable tolling should apply and to make specific findings as to the reasons for its determination.

### *FINAL JUDGMENT*

In accordance with the court's memorandum opinion and order of even date herewith,

The court ORDERS, ADJUDGES and DECREES that the order sustaining liquidating trustee's objection to claims of Internal Revenue Service, from which appeal is taken, be, and is hereby, reversed, and this action be, and is hereby, remanded to the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, so that the court may determine whether equitable tolling should apply and make specific findings of fact and conclusions of law as to the reasons for its determination.

---

**6.** This fact is established as a matter of law by the record.